AUGUST BECKER *et al.* Appellants, *vs.* WALTER BECKER
*et al.*—(JESSE MISHLER, Appellee.)

*Opinion filed April 19, 1911.*

1. EVIDENCE—*parol evidence showing waiver of provision of a
written contract does not vary the contract.* An executory con-
tract under seal cannot be modified by parol evidence so as to in-
troduce any new element into the contract or add any new terms
thereto, but parol evidence showing a waiver of some provision
does not alter or modify the contract.

2. SAME—*waiver of covenant in sealed contract may be shown
by parol.* A party for whose benefit a covenant is inserted in a
written instrument may waive such covenant by parol agreement
notwithstanding the instrument is under seal, and such waiver may
be proved by oral testimony in a suit by the other party to enforce
his rights under the written instrument.

3. ANTE-NUPTIAL CONTRACTS—*when heirs are estopped to say
that contract should not be enforced.* Where an ante-nuptial con-
tract provides that the husband shall have the wife's property ab-
solutely if she predeceases him, and he covenants, among other
things, to keep up a certain life insurance policy or its equivalent
during the wife's lifetime, the heirs of the wife are estopped, after
her death, to insist upon a forfeiture of the contract because the
covenant as to the insurance had not been kept by the husband,
where the evidence clearly shows that the wife waived the per-
formance of the covenant by insisting that the husband should not
carry any insurance.

APPEAL from the Circuit Court of Whiteside county;
the Hon. FRANK D. RAMSAY, Judge, presiding.

SKINNER & COE, CHARLES A. BIERNATSKI, and JARVIS
DINSMOOR, for appellants.

A. A. WOLFERSPERGER, McMAHON & ROGERS, and
McCALMONT & RAMSAY, for appellee.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of
the court:

Appellants, as the heirs-at-law of Augusta Mishler, de-
ceased, filed a bill in the circuit court of Whiteside county
to partition certain lands situated in said county which it

was alleged belonged to said Augusta Mishler at the time of her death. Jesse Mishler, the surviving husband of Augusta Mishler, was made a party defendant to the bill and interposed a demurrer thereto, which was sustained and a decree was entered dismissing the bill for want of equity, and appellants appealed from said decree to this court. At the October term, 1909, this court entered a judgment reversing the decree of the circuit court and remanding said cause, with directions to the circuit court to overrule the demurrer. The former opinion of this court is reported as *Becker* v. *Becker,* 241 Ill. 423. After the cause was remanded to the circuit court defendant below, Jesse Mishler, answered the bill and filed a cross-bill. A trial was had upon the issues made below upon evidence heard in open court, resulting in a decree dismissing the original bill and granting the relief prayed for in the cross-bill. Complainants below have again brought the record to this court for review.

This litigation grows out of an ante-nuptial contract which was entered into on the 16th day of March, 1889, between Augusta Scheer and Jesse Mishler, both of Whiteside county. The agreement is set out at large in the former opinion of this court. This agreement recites that whereas marriage is about to be solemnized between the parties, and whereas the said parties each own both real and personal property in their own right and it is desired that each party shall remain in the possession, control and enjoyment of all of the property owned by each, precisely as though no marriage had taken place, during the joint lives of the contracting parties, they mutually covenant that each of the parties shall own, control and enjoy all of the separate property of such party free and clear from any right or claim, of any kind or character, of said other party. The agreement provided that if at the death of Jesse Mishler the said Augusta Scheer should survive him, she shall be entitled to the money arising from a policy of insurance

of $2000 on the life of Jesse Mishler in the Whiteman's Life Insurance Company, which said policy was at the time of the making of said agreement in full force and effect, and that said policy, or its equivalent in some reputable company, shall be kept in full force and effect during the life of said Jesse Mishler as part of the consideration of said contract. Said agreement recited further, in consideration of said such marriage and the further consideration of money, that Jesse Mishler would waive and release unto said Augusta Scheer all dower interest in the real estate possessed by her or which she might thereafter acquire, and likewise release all claim upon her personal property, and to allow her to receive, expend and re-invest all income, rents and profits therefrom, at her' discretion, for her own separate use the same as though she was unmarried. Said agreement also provided that in consideration of the marriage and the covenants on the part of Jesse Mishler, Augusta Scheer relinquishes all right and claim, of every kind and character, in and to all of the property of the said Jesse Mishler or any property which he might thereafter acquire. The agreement further provided as follows: "And she [Augusta Scheer] hereby covenants and agrees, in consideration of said marriage and the aforesaid covenants and acquirements entered into on the part of Jesse Mishler, that the said Jesse Mishler shall at her, the said Augusta Scheer's, death, have as his own an absolute fee simple title in and to all the real estate of which she may die seized, and shall have, possess, control and own absolute all the personal estate, of every description, of which she may die possessed or which she may be entitled to, free from let or hindrance upon the part of the heirs of the said Augusta Scheer. The purpose and meaning hereof being, that in case Augusta Scheer shall survive the said Jesse Mishler she have her own separate estate and the money arising from the life insurance policy aforesaid, discharged of any right or interest, claim or demands, of

the heirs of the said Jesse Mishler, but in case she shall not survive the said Jesse Mishler, the latter shall at her death become immediately vested with all the absolute right, title and ownership in and to all the real and personal estate of which the said Augusta Scheer may die seized or possessed, to the exclusion of the heirs of the said Augusta Scheer."

The original bill alleged, and the proof showed, that the parties to this contract were married a short time after the date of the ante-nuptial agreement and lived together as husband and wife until the death of Augusta Mishler, which occurred in 1905. The original bill was filed by the children and grandchildren of a deceased brother of Augusta Mishler, who were her only heirs-at-law, and based their right to the real estate of which Augusta Mishler died seized upon the ground that the appellee, Jesse Mishler, did not keep the insurance policy mentioned in said contract in force and permitted the same to lapse many years before the death of his said wife, and never took out any other policy of insurance in lieu thereof in any other insurance company, and that in consequence of his failure to comply with said contract in respect to keeping up the insurance for his wife he had thereby forfeited all right, title and interest in and to the real estate of which his wife died seized.

When the case was before this court on the former hearing it was held that the original bill presented a state of facts which, if true, would deprive appellee of the right to claim the property which his wife owned at the time of her death, under the ante-nuptial contract. By his answer and cross-bill the appellee sets up a waiver by his wife, in her lifetime, of that provision of the ante-nuptial contract which required him to carry $2000 of life insurance for his wife's benefit. Appellee alleges in his answer and in his cross-bill that the Whiteman's Life Insurance Company, in which said $2000 was carried, was soon after said ante-nuptial contract, and after said marriage, merged in some

other company, and at that time, at the request of the said Augusta Mishler, said policy of insurance was dropped and discontinued; that appellee insisted upon taking out other insurance in the sum of $2000 in some other reputable insurance company to conform with the ante-nuptial contract, but that his wife insisted that he should not do so and that she would waive the same in said contract, and that at her request and upon her insistence he did not take out other insurance as stipulated in said ante-nuptial contract.

On the hearing before the court a number of witnesses were introduced who testified to conversations had with Augusta Mishler, in her lifetime, in relation to the $2000 life insurance policy upon the life of her husband. Calvin S. Mishler, a son of appellee, testified that he had a conversation with his step-mother in 1904, the year of the World's Fair at St. Louis. He testified that Mrs. Mishler said to him in the spring of that year that Mr. Mishler had carried life insurance, and that she thought it was like throwing money away to keep the life insurance going, and that she did not want him to carry the life insurance any longer. This witness testifies that this conversation occurred while he was visiting at his father's house and while he was digging up a small space in the garden for his step-mother. This witness says also that his step-mother offered to give him $10, and he said that he refused it, and she told him that he might as well take it for he would get it anyway some day; that she had left all her property to his father, and said, "Sometime you will have a pretty nice lot of money;" that his step-mother said at that time that she did not want her husband to carry life insurance for her benefit; that she did not need the insurance and had plenty of money of her own to live on.

David Schafer testified that he was acquainted with appellee and his wife and had been for a number of years, and that he worked for them digging a cellar and doing other work; that in the year 1903 or 1904, after the cellar

was dug, he had some money coming from Mr. Mishler and went to his house to get the money; that when he arrived at the house Mr. Mishler was not at home and Mrs. Mishler asked him to take a seat and wait until Mr. Mishler came in; that while he was waiting for Mr. Mishler to come he had a conversation with Mrs. Mishler in German, and that in this conversation Mrs. Mishler asked him whether he owned his own place and whether he had insurance on his life, and that the witness said that he did own his place and that he had insurance for himself and wife; that Mrs. Mishler said, "You are foolish; don't get any insurance; save your money and don't have any insurance at all; that is all nonsense." She said that Mr. Mishler had insurance and that it "busted up."

Melvin S. Mishler testified that he was forty-one years of age and a son of appellee; that he was well acquainted with his step-mother, Augusta Mishler, before and after her marriage to his father. He testified to a conversation had at the home of his father with his step-mother, in which she said, among other things, that his father had been carrying insurance on his life and had paid in about $13 and the company "busted," and that she did not want him to take out any more insurance.

John Eick testified that he had known Mrs. Mishler about all her life; that he knew her as far back as 1862; that he went to Mr. Mishler's home, in Sterling, in the year 1900, with his brother, who was a life insurance agent, for the purpose of soliciting insurance on the life of appellee; that his brother represented the Union Central of Cincinnati, Ohio; that a conversation occurred at that time in the Mishler home in which Mrs. Mishler said they did not want any insurance; that they had insurance in a company and the company had dissolved or gone out of business and that she did not want her husband to put another dollar in insurance; that no insurance was written for Mr. Mishler at that time.

Jennie Cushman testified that she had been acquainted with Augusta Mishler five years and knew her very intimately; that she lived in Mrs. Mishler's house for ten years and was often at her place, and that she visited Mrs. Mishler and took care of her several times during sickness; that she had a conversation with Mrs. Mishler, in the presence of her husband, in the year 1903, when Mrs. Mishler was sick; that at this conversation the death of a Mr. Waltz was spoken of, and Mrs. Mishler asked the witness if Mr. Waltz left any life insurance for his widow, and the witness said that she did not know; that Mrs. Mishler then asked the witness if her husband carried insurance, and Mrs. Cushman replied that he did. Mrs. Cushman then testifies that she asked if Mr. Mishler carried insurance for her, and Mrs. Mishler said that he had once but the insurance company failed and that she did not have him take any more insurance; that she did not believe in insurance and she never had him take out any more; that she did not want it and did not need it; that she had enough to live on without it. Mrs. Mishler also told this witness that one reason why she did not want Mr. Mishler to carry insurance for her was, that if he died suddenly people might think she killed him. Mrs. Mishler was seventy-three years old when she died.

There is nothing in the record that contradicts any of the foregoing testimony. Upon this evidence the trial court held that Mrs. Mishler had waived the provision in the ante-nuptial contract requiring appellee to carry $2000 life insurance upon his life for her benefit and entered a decree for the specific performance of the contract, vesting the fee simple title of the real estate of which Mrs. Mishler died seized, in appellee. All of the foregoing evidence was received subject to the objection that it was not competent to vary or modify a written contract under seal by parol evidence.

Appellants' most serious contention in this court is that the decree should be reversed because it is based upon incompetent testimony. Appellants' position may be stated as follows: The ante-nuptial contract related to marriage, and was therefore required by the statute to be in writing. Since the original contract was an instrument in writing under seal, any new agreement altering or enlarging its terms must also be in writing in order to be valid. In support of this general proposition many authorities are cited, several of which are Illinois cases. If the rights of the parties depended upon the rule contended for by appellants no serious question could arise as to the correctness of the position assumed. There are many cases in this court that establish the rule, beyond controversy, that an executory contract under seal cannot be modified by parol, so as to introduce any new element into the contract or by which any new terms are added thereto. The rule contended for by appellants is thus announced by this court in *Alschuler* v. *Schiff,* 164 Ill. 298, where, on page 302, this court said: "There can no longer be any contention in this State over the general rule insisted upon by appellee, that a sealed executory contract cannot be altered, changed or modified by parol agreement. This rule of the common law has been adopted by this court and consistently followed in a long line of unbroken authorities,"—citing *Chapman* v. *McGrew,* 20 Ill. 101; *Hume Bros.* v. *Taylor,* 63 id. 43; *Barnett* v. *Barnes,* 73 id. 216; *Loach* v. *Farnum,* 90 id. 368; *Goldsborough* v. *Gable,* 140 id. 269.

The rule announced in these cases, and others in line with them, is too firmly established by the decisions of this court to be seriously controverted at this time. Conceding the full force of the rule above announced, there is a well defined distinction between a parol contract which adds to or modifies the terms of an executory written contract under seal, and a parol agreement made by the parties by which some of the covenants in such written contract are

waived by the party for whose benefit such covenant was inserted. Where a party to such written instrument by some affirmative action on his part induces the opposite party to believe that the strict performance of a covenant will not be insisted upon or that the same will be waived, and such other party fails to perform the covenant through the influence or request of the covenantee, in equity such party will be estopped to insist that the written contract is no longer obligatory upon him because of the non-performance of such covenant. A waiver of a covenant by the party for whose benefit it is inserted into a written instrument may be made by parol, and such waiver is held not to be a modification or change in the terms of the original agreement.

The rule last above announced was recognized and applied by this court in *Worrell* v. *Forsyth,* 141 Ill. 22. In that case an ante-nuptial contract had been entered into by which the wife agreed that if she should survive her husband she was to have a certain described eighty acres of land and $500 in money out of his estate in lieu of all other rights in and to his property. After the marriage the husband sold the eighty acres mentioned, and his wife joined in the deed therefor to the purchaser in consideration of the parol promise of the husband to give her another eighty acres of land of equal value, and at the same time the husband conveyed the latter tract to a trustee in trust for the husband during his life but to be conveyed to the wife if she survived him, and it was held competent for the husband and wife to enter into the parol contract for the substitution of another tract of land in place of that first given to the wife. On page 30 this court said: "An executed parol agreement may be shown to defeat a recovery upon an instrument under seal. If the new parol agreement, even though it be without consideration, has been executed, and by means thereof one of the parties thereto has been led into a line of conduct which must be prejudicial to his

interests, an equitable estoppel arises in his favor,"—citing *White* v. *Walker,* 31 Ill. 422; *Loach* v. *Farnum, supra; Cooke* v. *Murphy,* 70 Ill. 96; *Swansey* v. *Moore,* 22 id. 63; *Wheeler* v. *Frankenthal,* 78 id. 124.

The same principle was again applied by this court in *Moses* v. *Loomis,* 156 Ill. 392. In that case the court had under consideration the effect of a parol waiver of a covenant in a lease against alterations made by the tenant without the consent of the lessor, and it was held that it was within the power of the landlord to waive such covenant by parol. It is there expressly held that rights under sealed instruments may be waived by parol. This case seems to be decisive of the contention of appellants in the case at bar. It was there pressed upon the attention of the court, as it is here, that because the lease itself was a sealed instrument it could not be varied or abrogated by words not under seal. Notwithstanding this argument this court held that the landlord might properly, by parol, waive, and in that case had waived, the covenant in the lease against alterations without the consent, in writing, of the landlord. To the same effect is the case of *Starin* v. *Kraft,* 174 Ill. 120.

In the case of *Chicago and Eastern Illinois Railroad Co.* v. *Moran,* 187 Ill. 316, it was held that a provision in a contract under seal might be waived by a parol agreement. In that case a written contract provided that no stone other than that specified in the contract should be used without the written consent of the company's engineer. The evidence showed that the engineer orally consented and permitted the substitution of other stone, which was accepted and used by the company. It was held that an estoppel was thereby created which prevented the company from defeating the right of recovery because stone other than that mentioned in the contract had been used.

These authorities distinguish the case at bar from the line of authorities relied upon by appellants. The evidence in this case is uncontradicted that Mrs. Mishler made re-

peated declarations to the effect that she did not need life insurance; that she had money enough to live on and did not believe in life insurance; that the premiums paid therefor were a waste of money; that after the insurance company in which her husband had his insurance became insolvent she protested against his taking out other insurance for her benefit, and that appellee, acting on these repeated statements of his wife, did not take other insurance for her benefit. Under these circumstances it would be manifestly inequitable to allow her heirs to insist upon a forfeiture of the entire contract because this particular covenant was not performed, in view of the uncontradicted evidence that its non-performance was not only assented to but was urgently insisted upon by Mrs. Mishler in her lifetime. The parol evidence introduced was properly admissible for the purpose of showing that Mrs. Mishler waived the covenant in the ante-nuptial contract in regard to the life insurance, and such evidence justified the court below in finding, as it did, that there had been a waiver on her part of this covenant. There is nothing unreasonable or improbable in the evidence of the witnesses by whose testimony the waiver is established when the situation of the parties is considered. Mrs. Mishler had no children and no descendants of children. She was above seventy years of age. The evidence shows that she had ample means of her own to keep herself comfortable in case she survived her husband. The item of $2000 life insurance was a matter of no serious consequence to her, and in view of her prejudice against life insurance generally, and the fact that the company in which her husband carried his insurance had become insolvent, it is not at all unreasonable that she would insist upon his not again re-insuring his life. At all events, the uncontradicted evidence shows that she did so insist and that her wishes in this regard were respected and carried out by the appellee. Her heirs should therefore, in equity, be estopped from taking any

advantage of appellee's failure to continue the insurance for his wife's benefit.

The decree of the circuit court of Whiteside county being in accordance with the views herein expressed, will be affirmed.

*Decree affirmed.*