STELLA L. ANDERSON, Ex'r of the Last Will and Testament of Oscar W. Anderson, Deceased, Plaintiff-Appellee, *v.* W. L. CREIGHTON *et al.,* Defendants-Appellants.

(No. 73-303;

Third District—March 24, 1975.

Pool & Pool and Warren, Hayner, & Baxter, both of Ottawa, for appellants.

Anderson & Anderson, of Earlville, and Berry & O'Connor, of Ottawa, for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendants appeal from a judgment for plaintiff in the sum of $12,363.20 entered upon a jury verdict in plaintiff's action to recover the value of a life insurance policy which it was alleged defendant's stated would be provided as an incident to a retail installment contract for farm machinery.

Defendant, Creighton, operated a farm machinery agency and represented Allis-Chalmers Manufacturing Company. Defendant, Allis-Chalmers Credit Corporation, is a wholly owned subsidiary of the Manufacturing Company. Defendant, Dewey, was the district sales manager for the

latter. Upon plaintiff's motion, the defendant, Prudential Insurance Company, was dismissed from the case at the close of plaintiff's evidence.

Plaintiff alleged that on August 11, 1970, the decedent, Oscar Anderson, executed a retail installment contract in reliance upon assurances and representations that credit life insurance was available to him and that the cost of such insurance was included in the annual percentage rate of 15½ per cent in the retail installment contract.

Defendants deny that decedent was covered by the provision for life insurance, deny that decedent made any inquiry concerning the life insurance and alleged certain affirmative defenses. The first of such defenses is that on or about August 11, 1970, Oscar Anderson executed a "Purchasers Application for Credit", which included a provision that group life insurance in connection with the indebtedness was "contemplated" and stated:

> "I further understand that such insurance is not available to me if I have attained 66 years of age on the date of indebtedness."

Immediately beneath and immediately above his signature, Oscar Anderson filled in the date of his birth, August 14, 1903.

A second defense is that the executed retail installment contract "on the second page," which is after the place for signature of the parties, appears a heading "Notice of Proposed Group Life Insurance," followed by several paragraphs which include:

> "[I]f this Contract is assigned, or otherwise transferred to Allis-Chalmers Manufacturing Company, group life Insurance protection * * * is contemplated in connection with the indebtedness hereunder. No payment will be collected from or charged to the buyer for such insurance.
>
> In no event however, will insurance under the group life insurance be provided with respect to the indebtedness if * * * such indebtedness originates on or after the buyer's attainment of the age of 66 * * *."

Also pertinent for later consideration is the concluding paragraph beneath which notes:

> "If the insurance becomes effective, a certificate of insurance describing the coverage afforded will be furnished within 30 days. *If such insurance does not become effective, advice thereof will be given to the buyer.*" (Emphasis supplied.)

It is not disputed that such life insurance coverage was included in the finance rate charged under the contract and that decedent was never advised that the insurance did not become effective.

The record shows that decedent farmed with his sons, Roland and Gerald. Checks drawn in payment upon the contract before his death

were made as "Oscar W. Anderson & Sons, by O.W.A." The record is clear that in all of the negotiations incident to the sale it was understood that Gerald and Roland were discussing the transaction with Oscar and procuring his agreement on the details. In the summer of 1970, the sons, jointly and severally, made inquiries concerning the purchase of equipment from the Creighton Agency and asked concerning the terms of purchase. Lowell Anderson, who is no relation to the parties, was a salesman for Creighton. He and Dewey, as district manager, called on several occasions at the farm to settle the details.

The sons testified to conversations with Lowell Anderson and Dewey concerning the fact that life insurance coverage was desired and considered necessary, and that Lowell Anderson and Dewey stated that it was customary to put the contract and the coverage into the name of the oldest party to the transaction. The sons testified that it was stated to Lowell Anderson and Dewey that Oscar Anderson was over 65 years of age and requested that the salesmen "check" as to whether Oscar Anderson would be insured, and that Lowell Anderson and Dewey subsequently assured them that life insurance would be provided. On August 11, 1970, the contract, prepared by Lowell Anderson and Dewey, was taken to the "homestead" and Oscar Anderson, who was preparing to leave, was called from the house and signed the documents. The application for credit also bears the date August 11, 1970. It appears to have been signed on that date, although actually prepared earlier.

The defendant, Dewey, testified that he recalled the conversation in which it was stated that life insurance was included in the interest charge, but that he did not recall any inquiry by Roland or Gerald Anderson concerning the availability of life insurance for Oscar; neither did he recall that Lowell Anderson stated that he would "check" for an answer to the question. Lowell Anderson, who was called by defendant, Creighton, testified that he did not recall being asked whether Oscar Anderson's age would prevent coverage by insurance, and he did not recall that he agreed to inquire.

The principal issue argued upon appeal is whether the court erred in admitting the testimony of the sons, Roland and Gerald, concerning the assurances that life insurance coverage was provided for Oscar Anderson. It is urged that such evidence violates the parol evidence rule and that the provision of the contract and the application for credit must be construed so that life insurance coverage was not provided for Oscar Anderson. The trial court ruled that the record showed that the insurance premium was included in the finance charge, that no rebate for such premium was or had been made, and that defendants were estopped from enforcing the contract terms which would deny coverage to Oscar Ander-

son. Upon such construction he concluded that the parol evidence did not apply to bar the testimony.

■■ The sum of Illinois cases supports the conclusion that while parol evidence is not admissible to modify or alter a written contract by the addition of new terms or the introduction of new elements, a party for whose benefit a provision has been inserted into a contract may waive such term and the waiver may be shown by parol. *Becker v. Becker*, 250 Ill. 117, 95 N.E. 70; *Fuchs v. Peterson*, 315 Ill. 370, 146 N.E. 556; *McQueeny v. Daily*, 14 Ill.App.2d 477, 144 N.E.2d 805; *Peterson v. United States Building Maintenance Co.*, 96 Ill.App.2d 398, 239 N.E.2d 322; *Dunn v. Hoefer*, 5 Ill.App.3d 793, 284 N.E.2d 1.

The cases cited by defendant upon the issue are within the category wherein the parol evidence would introduce a new element of liability, rather than waive a term written into the contract. In the argued *Wood v. Dillon*, 329 Ill.App. 16, 66 N.E.2d 743, the evidence showed that there was not a waiver of the written term and a party attempted to show an intent which was contrary to the written term by parol evidence.

It is a question of fact for the jury whether there was a waiver of the contract provisions which would bar life insurance coverage by the assurances of the sales agents. *Colontuono v. State Farm Insurance Co.*, 8 Ill.App.3d 84, 289 N.E.2d 235.

■■ We conclude, however, that the record shows that the evidence of waiver of the contract provision is not limited to the assurances of the sales representatives of Creighton and the Manufacturing Company, but rather shows that all defendants acted with such knowledge of the facts that they should not be permitted to assert any bar of the parol evidence rule.

The application for credit and the retail installment sales contract signed by Oscar Anderson were delivered to the defendant, Creighton, by the salesmen. He executed the contract and thereafter assigned such to the defendant, Credit Corporation. The record shows that one Eckoff, a credit manager for the latter corporation, accepted the financial statement and assignment of the contract with the documentation of age, and that he thereafter advised Oscar Anderson of a minor correction in the contract and of the fact that the contract had been assigned to the Credit Corporation. He testified that life insurance coverage was included in the financing charge, but he both testified and the record includes a letter written by him in his capacity as credit manager stating that Oscar Anderson was never advised or notified that the life insurance provision in the contract was not provided for him.

■■ The roll of defendant, Dewey, admittedly was that of assisting in the sale of the equipment in any way that he could. He testified as to

his familiarity with the provisions of the contract and that he was aware that it was represented that life insurance was included in the financing charge. There is evidence from which the jury could properly conclude that Oscar Anderson's age was stated in his presence, that he knew that particular inquiry was made as to whether Oscar Anderson could be insured, and that he had heard or knew of the assurances that he would be.

The retail installment contract appears to be drawn within the requirements of the Retail Installment Sales Act (Ill. Rev. Stat. 1969, ch. 121½, pars. 501-503.) Section 11 of the Act provides that if any credit life insurance which is included in the contract is terminated, a refund of credit should be determined and made. The trial court correctly found that although Oscar Anderson was charged the same financing rate to one whom life insurance was provided, no rebate was made to him.

■■ The defendant Creighton also urges that a verdict should have been directed in his favor for the reason that any representations by Lowell Anderson and Dewey were beyond the scope of their actual or apparent authority as sales agents. While it is unnecessary to discuss such issue at length by reason of the conclusions reached, we note that Creighton testified that Lowell Anderson had authority to negotiate sales and acted on his behalf and he knew that it was common for Dewey to accompany and assist in such sales. There is no evidence of limitation upon the authority of either. *Wallace v. Prudential Insurance Company of America*, 12 Ill.App.3d 623, 299 N.E.2d 344.

The judgment of the trial court is affirmed.

Affirmed.

SIMKINS, P. J., and CRAVEN, J., concur.