THE CHAMPAIGN NATIONAL BANK, Plaintiff-Appellee and Cross-Appellant, v. LANDERS SEED COMPANY, INC., *et al.,* Defendants-Appellants and Cross-Appellees.

Fourth District   No. 4—87—0460

Opinion filed January 21, 1988.—Rehearing denied March 16, 1988.

Law Offices of John H. Bisbee, of Macomb (John H. Bisbee, of counsel), for appellants.

James W. Evans, P.C., of Evans & Froehlich, of Champaign, for appellee.

JUSTICE LUND delivered the opinion of the court:

The plaintiff Champaign National Bank, a national banking association, and defendant Landers Seed Company, Inc., both appeal from a judgment on a jury verdict returned in the circuit court of Moultrie County.

Plaintiff brought an action on a promissory note against defendant, and the jury returned a verdict in favor of the plaintiff for $724,637.37. Defendant counterclaimed on a theory of contract to make future loans, and the jury returned a verdict in favor of defendant, against plaintiff, for $60,833.31. Judgment on the verdicts was entered.

A condensed statement of defendant's position on appeal is (1) the trial court erred in not entering judgment *n.o.v.* in favor of the defendant because the evidence establishes waiver as to the plaintiff's right to call the debt evidenced by the promissory note; and (2) the verdicts are inconsistent, and the verdict in favor of the plaintiff must be set aside and a new trial granted. Defendant basically claims any judgment against it is against the manifest weight of the evidence.

Plaintiff contends (1) the trial court allowed evidence in violation of the parol evidence rule; (2) the trial court erred in not granting its

motion to set aside the judgment in favor of defendant for $60,833.31 as being against the manifest weight of the evidence; and (3) the trial court erred in giving jury instruction No. 23, which provided for consideration of, in plaintiff's opinion, inappropriate items of contract damages.

Defendant was a seed business operated by Charles Landers in Sullivan, Illinois. Plaintiff originally participated in loans defendant obtained through the First National Bank of Sullivan. On August 23, 1982, the plaintiff became a direct lender to defendant, and, at that time, the $1,200,000 representing plaintiff's share of the participating indebtedness to the First National Bank of Sullivan, plus interest due on the $1,200,000 in the amount of $81,126.83, was transferred to a 120-day promissory note due plaintiff from defendant in the amount of $1,281,126.83. This note was secured by various guarantees and mortgages executed by Charles Landers, his wife, his father, and his mother. This note was renewed for 120 days on December 21, 1982, and it is uncontested that the unpaid principal and interest at the time of the verdict was $724,637.37.

The plaintiff called the debt in July 1983, directing liquidation of the corporation. On January 16, 1984, plaintiff filed its complaint seeking judgment on the note. Defendant eventually filed counterclaims which, at trial time, were based on breach of contract, fraud, and bad-faith dealings. The allegations in the counterclaims also resulted in affirmative defenses of waiver, estoppel, and bad faith.

Basically, all of defendant's counterclaims and defenses are based on allegations of promises made to the Landers at the August 23, 1982, meeting where notes and security documents were executed. The alleged commitment was to continue financing Landers Seed Company as long as there was progress towards profitability and a chance at profitability. These so-called promises are the basis for the counterclaim based on contract, as well as the basis for all other defenses and counterclaims.

Some discussion of the evidence is necessary. In answer to a question as to whether Lee O'Neill, the plaintiff's agent, made any representations respecting profitability at the August 23, 1982, meeting, Charles Landers stated:

"As far as any, we didn't talk about any dollars, no. All we talked about was the idea that as long as we made progress towards profitability, had a chance at profitability, paid our interest and worked with Lee, gave him the information he wanted from us that he would not collect on the note."

He further stated in answer to questions:

"A. Well, I think he gave us the assurances at that particular point in time that they would forebear; they would be willing to work with our firm until such time as we became profitable or even had a chance of becoming profitable, as long as we paid the interest and we worked with them and we did the things that they wanted us to do, they were going to stay with us. And he understood that was going to take some time. He understood that might take up to three years.

Q. Did he say up to three years?

A. That was in the discussion and we talked about it and I think he understood and yes, I believe he said it."

According to Charles Landers, the assurances were required before the Landers executed the various documents on August 23, 1982. O'Neill denied the execution of the documents was conditioned on any assurances by him, and he denied offering terms of any kind. He did testify that he had indicated:

"[T]he bank was willing to work with the corporation as long as the corporation was performing and as long as the corporation was moving toward profitability, as long as the financial structure of the corporation and the financial structure of the guarantors was not adversely changed."

We reverse the $60,833.31 judgment against the plaintiff and affirm the $724,637.77 judgment against the defendant for two reasons.

### INSUFFICIENT EVIDENCE OF CONTRACT

We are aware that counsel for plaintiff appeared to admit sufficient evidence existed for a jury determination of the fact issue relating to the contract count of the defendant's countercomplaint. However, a contrary argument was made in the brief filed by the plaintiff. We have examined the trial evidence, and for purposes of creating proper precedent, have elected to base our opinion upon the evidence and the law, not upon the opinions of counsel.

■ The terms of a contract must be reasonably certain. Some terms may be missing or left to be agreed upon, but if the essential term or terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract. Restatement (Second) of Contracts §33 (1981).

■ An agreement to continue to refinance or roll over a debt appears similar to an oral contract to lend money in the future. A valid cause of action for breach of an oral contract to lend money in the future is recognized in Illinois. (*Wait v. First Midwest Bank/Danville* (1986), 142 Ill. App. 3d 703, 707, 491 N.E.2d 795, 800; *Bank of Lin-*

*colnwood v. Comdisco, Inc.* (1982), 111 Ill. App. 3d 822, 444 N.E.2d 657.) The party claiming such a contract must show that the alleged agreement contains sufficient definitiveness to be enforceable. (*Wait,* 142 Ill. App. 3d at 708, 491 N.E.2d at 801; *Carrico v. Delp* (1986), 141 Ill. App. 3d 684, 688, 490 N.E.2d 972, 975.) In *Wait* and *Carrico,* our court cited *McErlean v. Union National Bank* (1980), 90 Ill. App. 3d 1141, 414 N.E.2d 128, where it was held an agreement to loan money in the future was enforceable only if it contemplated the terms upon which the future loan should be made. The *McErlean* court stated:

> "These terms would include, for example, the intended duration of the line of credit; the applicable rate of interest to be charged for any loan emanating from such an agreement, or the basis for how such interest would be ascertained; what duration or date or dates were contemplated for maturity of such loans; and what mode or rate of repayment was contemplated, *i.e.*, whether the entire amount would be repayable or if repayment in installments would be acceptable." 90 Ill. App. 3d at 1146, 414 N.E.2d at 132.

■ We recognize that in some fact situations "duration" can be inferred based on custom (*Wait,* 142 Ill. App. 3d at 709, 491 N.E.2d at 801), and part performance of an agreement may remove uncertainty and establish an enforceable contract. (*Yoder v. Rock Island Bank* (1977), 47 Ill. App. 3d 486, 491, 362 N.E.2d 68, 72.) We find that this cannot be done under the facts established by the evidence in the present case.

According to Charles Landers' testimony, O'Neill agreed not to collect on the note "as long as we make progress toward profitability, had a chance at profitability." Who is to judge the element of "progress towards profitability," or the element of "chance of profitability?" As will be discussed in more detail later in this opinion, the evidence indicated a loss by defendant of $375,551 for the fiscal year ending June 30, 1982, and a loss of $854,492 for the fiscal year ending June 30, 1983. The corporate debts exceeded assets on June 30, 1983, by $1 million. Charles Landers had failed in his projection as to corporate income in the fall of 1981, in the spring of 1982, and at various times during the 1982-83 fiscal year.

No cost of money terms were included in the alleged agreement; no terms exist as to additional capital advances or duration of loans; maturity dates were not provided; mode or rate of repayment was not contemplated.

Previous decisions upholding oral contracts to loan money in-

volved facts which were not necessarily in conflict with the parol evidence rule. Recognizing the possibility of an oral contract in the present case, to renew notes in the future, appears to necessarily create an exception to the rule. The promissory note provides for payment in 120 days after date and also specifically allows for collection on default or if the lender should deem itself insecure. Such terms appear inconsistent with an oral agreement to continue to refinance.

■ The parol evidence rule is not a rule of evidence but a rule of substantive law. Prior written and oral agreements are, by the new written contract, made ineffective. There can be partly written agreements and partly oral agreements. (Restatement (Second) of Contracts §213 (1981).) In the present case, the written instruments provide for collection with different terms than the suggested oral agreement.

The exception we recognize to the parol evidence rule must not be so broad as to create a waiver of the requirements of certainty and definiteness in contracts. Any other holding would invite havoc to the world of financing.

We find that the facts before the trial court are not sufficient to provide the necessary definitiveness. We further find that the so-called contract did not contemplate the terms of future loans or refinancing of existing loans. As a result, a contract cannot exist as a matter of law, and the jury verdict against plaintiff must be reversed. This holding is consistent with our recent opinion in *McClellan v. Banc Midwest* (1987), 164 Ill. App. 3d 304.

Defendant argues that the affirmative defense of waiver was a necessary result of the jury's verdict on the contract claim of the counterclaim. Corbin on Contracts (3A A. Corbin, Contracts §752, at 480 (1960)) is cited for the proposition that if a vendor "merely states to the purchaser that he does not insist on payment on time, he thereby eliminates it as a condition." Corbin is cited further for the proposition that if a vendor eliminates the condition in exchange for consideration, and consideration is given, there is still waiver, but it is also a modification by a substitute contract.

In the present case, defendant would have us recognize a waiver of the right to collect an obligation based on the theory the plaintiff received consideration in the nature of defendant allowing a direct relationship between defendant and plaintiff. It is suggested that the loan participation status did not give plaintiff direct rights against defendant.

■ The only evidence of the participation agreements between the First National Bank of Sullivan and the Champaign National Bank

is defendant's exhibit No. 12, which is a certificate of participation dated October 8, 1981. This relates to a $120,000 payment of Champaign National Bank's participation in a loan of $120,000 made to Landers Seed Company evidenced by a note dated October 8, 1981. While the certificate appears to reserve collection decisions with the Sullivan bank, the Sullivan bank acknowledges holding a *pro rata* share in all collateral and guarantees for the Champaign bank. An obligation of good faith was imposed on the Sullivan bank in its participation dealings with the Champaign National Bank. (Ill. Rev. Stat. 1985, ch. 26, par. 1—203.) The argument that plaintiff did not have effective remedies against defendant and guarantees prior to August 23, 1982, is not established by the evidence and is without merit.

On the issue of waiver, defendant cites *John Kubinski & Sons, Inc. v. Dockside Development Corp.* (1975), 33 Ill. App. 3d 1015, 339 N.E.2d 529 (which involved time of performance of a dredging contract), *Hart v. Lyons* (1982), 106 Ill. App. 3d 803, 436 N.E.2d 723, *Will v. Will Products, Inc.* (1982), 109 Ill. App. 3d 778, 441 N.E.2d 343 (both of which involved time is of the essence clauses in real estate contracts), *Pantle v. Industrial Comm'n* (1975), 61 Ill. 2d 365, 335 N.E.2d 491 (which held no waiver of the time limitations in filing a claim for workers' compensation), *Aetna Life Insurance Co. v. Sanford* (1902), 200 Ill. 126, 65 N.E. 661 (which dealt with the late payment of a life insurance premium), and *Anderson v. Creighton* (1975), 26 Ill. App. 3d 375, 325 N.E.2d 85 (which involved the waiver of an age condition for a life insurance policy).

Restatement (Second) of Contracts (Restatement (Second) of Contracts §84 (1981)) applies to the law of waiver. A subnote to that section provides as follows:

> "[*d.*] *Conditions which may be waived.* The rule of Subsection (1) applies primarily to conditions which may be thought of as procedural or technical, or to instances in which the non-occurrence of condition is comparatively minor. Examples are conditions which merely relate to the time or manner of the return performance or provide for the giving of notice or the supplying of proofs. Insurance policies ordinarily contain conditions of notice and proof of loss and of time for suit; and guarantors, endorsers and other sureties may be discharged by an agreement varying the duty of the principal debtor, by failure of diligence in presentment or prosecution, or by failure to give a required notice. In such cases, even though a promise to disregard the non-occurrence of the condition subjects the promisor to a new duty, the new duty is not regarded as signifi-

cantly different from the old and the promise is binding without consideration, reliance, or formality. See, *e.g.*, Uniform Commercial Code §3—606, Comment 2." Restatement (Second) of Contracts §84, comment *d*, at 219 (1981).

■ The right to collect a debt when due is not a procedural or technical right, and the change in the right to collect is significantly different from the terms of the written contract, *i.e.*, the promissory note. Waiver cannot apply to the facts in evidence in the present case.

### THE VERDICT FINDING THAT PLAINTIFF VIOLATED TERMS OF THE ALLEGED CONTRACT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

Champaign National Bank was participating in the defendant's loans to the extent of $500,000 as of September 1981. O'Neill met with Charles Landers in September 1981 and was told that defendant would show a profit in excess of $50,000 for the fiscal year ending June 30, 1982. In April 1982, the plaintiff had loan participations to the extent of $1 million, and Charles Landers asked for $200,000 more. At that time, Landers estimated losses at $100,000 for the fiscal year. Infusion of capital from outside sources was recommended by O'Neill.

At the April 1982 meeting, Landers projected 1982-83 fiscal year profits to be between $50,000 and $55,000. The certified public accountant's report showed the loss for the fiscal year ending June 30, 1982, to be $378,551. An accompanying note criticized the method of computing inventory value, suggesting overevaluation, thus substantially reducing the amount of the loss.

From August 23, 1982, until July 1, 1983, O'Neill and Charles Landers were in frequent contact. O'Neill was to be furnished with monthly financial reports. The $1,281,126.83 was evidenced by a new note on December 21, 1982. Interest was paid monthly through February 1983, but not thereafter. Principal payments were made from the sale of property owned by Charles Landers' parents. According to O'Neill, and not refuted by Charles Landers, there was a meeting on March 29, 1983, during which O'Neill expressed concern and suggested finding a buyer for defendant. Landers, on March 29, indicated there would be a loss for the fiscal year.

On May 12, 1983, Landers requested an additional $300,000 loan. It was not given. Landers was selling inventory to pay overhead expenses, and the cash flow problem was critical.

On July 1, 1983, a meeting was held with Charles Landers indicating the loss for fiscal year ending June 30, 1983, would be $500,000.

Landers provided a 1983-84 fiscal year projection which indicated two scenarios, one showing an $800 profit and one showing a $73,000 projected loss.

The eventual CPA report shows a fiscal year loss of $854,492 and stated current liabilities exceeded current assets by $1,003,144.

■ A decision by plaintiff that the defendant could not become profitable would, under the facts presented, be a sound business judgment, and any holding to the contrary would be against the manifest weight of the evidence. Charles Landers' projections were never in the ballpark. His failure to use the realistic value of inventory in the fiscal year ending June 30, 1982, distorted the net loss. According to the testimony of defendant's CPA, the loss should have been increased $416,000. Not only were Charles Landers' projections erroneous, but he had used poor judgment in overvaluing inventory for purposes of determining 1982 losses.

Plaintiff's actions were reasonable and justifiable even if an agreement had existed.

We affirm the judgment in favor of plaintiff and reverse and vacate the judgment in favor of defendant.

Affirmed in part; reversed in part.

GREEN, P.J., and SPITZ, J., concur.