**RASKAS FOODS, INC., and Nauvoo Cheese Company, Plaintiffs/Respondents,**

v.

**SOUTHWEST WHEY, INC., and Nutrition 101, Inc., Defendants/Appellants.**

**Nos. 73794, 73845 & 73863.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 6, 1998.

David O. Danis, T. Evan Schaeffer, Craig Concannon, St. Louis, for Southwest Whey.

James C. Brandenburg, Todd M. Boehlje, St. Louis, for Nutrition 101, Inc.

Edwin D. Akers, Jr., Thomas P. Hohenstein, Robert W. Schmieder, II, St. Louis, for Raskas Foods & Nauvoo Cheese Co.

CRANDALL, Judge.

Plaintiffs, Raskas Foods, Inc. and Nauvoo Cheese Company, brought a declaratory judgment action against defendants, Southwest Whey, Inc. and Nutrition 101, Inc. Defendants appeal from the trial court's grant of summary judgment in favor of Nauvoo Cheese Company.[1] We affirm.[2]

The facts, as gleaned from the record, established that defendants, Nutrition 101, Inc. (Nutrition) and Southwest Whey, Inc.

---

1. The trial court designated its grant of summary judgment in favor of Nauvoo final for purposes of appeal and later amended the judgment to include language that there was no just reason for delay in accordance with Rule 74.01(b).

2. Although the trial court designated its denial of Southwest Whey, Inc.'s motion for leave to file an amended answer and counterclaim against Raskas Foods, Inc. final for purposes of appeal, that ruling is not a final judgment. Regardless of the trial court's designation, the court's ruling on the motion for summary judgment pertained only to Nauvoo Cheese Company and thus the litigation remains pending as to Raskas Foods, Inc. Therefore, the ruling on Southwest Whey, Inc.'s motion is not final and appealable.

(Southwest), formed a joint venture to obtain whey, a by-product of cheese manufacturing, from dairies to market as feed for hogs. Nutrition was an Illinois corporation with its principal place of business in Illinois. Southwest was a New Mexico corporation with its principal place of business in New Mexico.

Plaintiffs, Raskas Foods, Inc. (Raskas) and Nauvoo Cheese Company (Nauvoo), were affiliated corporations with common ownership. Raskas and Nauvoo were both Missouri corporations, maintaining corporate offices in St. Louis County. In 1989, Southwest entered into a written contract with Raskas for the removal of whey from Raskas's plant in the City of St. Louis. A subsequent written modification required the removal of all whey from that plant. Also in 1989, defendants orally agreed to remove whey from Nauvoo's Illinois plant. In 1990, this agreement was modified, giving defendants the right to remove whey as long as Nauvoo produced it and no new technologies affected its value.

In June 1992, Raskas and Nauvoo terminated their agreements with defendants and sent termination letters. Defendants brought an action in St. Louis County against Raskas and Nauvoo for breach of contract and against Nauvoo for fraudulent misrepresentation. They subsequently dismissed the action without prejudice.

Raskas and Nauvoo then brought the present action in St. Louis County against defendants. The petition was titled "Petition for Declaratory Relief." Count I was for "Breach of the Raskas Contract" and alleged that defendants materially breached the amended agreement by failing to remove all the whey from the Raskas facility in the City of St. Louis and by disposing of whey in Franklin County in violation of the law. Raskas sought a declaration that defendants' breach of the agreement justified Raskas's termination of the agreement. Count II was labeled "Existence and/or Nature of any Nauvoo Contract" and alleged that, in addition to the aforementioned breach of the

agreements, the oral agreement with Nauvoo was not only terminable at will because its terms were indefinite as to duration, but also unenforceable because it was executory and violated the statute of frauds. Nauvoo sought a declaration that its termination of the oral agreement was justified.

Defendants filed motions to dismiss the action on the basis that the petition failed to state a claim upon which relief can be granted and that venue was improper in St. Louis County. The trial court denied the motions. Nauvoo then filed a motion for summary judgment which the trial court granted. This appeal ensues.

■ We first address the denial of defendants' motions to dismiss Nauvoo's action.[3] Defendants argue that the trial court should have granted their motions to dismiss for two reasons: (1) St. Louis County was not the proper venue; and (2) Nuavoo's petition failed to state a cause of action.

■ We first consider whether Nauvoo's petition stated a cause of action for declaratory relief. Under Section 527.010, RSMo (1994) of the Declaratory Judgment Act, trial courts have the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." The trial court is afforded wide discretion in administering the Act. *Preferred Physicians Mut. Management. Group, Inc. v. Preferred Physicians Mut. Risk Retention Group*, 916 S.W.2d 821, 823 (Mo.App. W.D.1995). The Declaratory Judgment Act has the purpose of affording relief from uncertainty and insecurity, and of reducing the multiplicity of litigation. *Id.*

In the instant action, Nauvoo sought a declaration of the existence of a contract with defendants as well as a declaration of its rights and duties under the contract. Nauvoo pleaded a contract, its interest therein, a dispute as to its validity, construction, and effect and prayed for a declaration of the

**3.** Ordinarily, a denial of a motion to dismiss is not final and thus not appealable. *In re Marriage of DeLeon*, 804 S.W.2d 801, 802 (Mo.App.1991). An order denying a motion to dismiss, however, can be considered as part of the appeal from a final judgment. *Id.* As previously indicated, the trial court's grant of summary judgment in favor of Nauvoo was a final judgment. Defendants thus could appeal from the denial of the motion to dismiss as part of an appeal from the grant of summary judgment in favor of Nauvoo.

parties' rights thereunder. These allegations were sufficient to state a cause of action for declaratory relief. *See Mercantile Trust Co. v. Chase Hotel, Inc.,* 510 S.W.2d 807. 809 (Mo.App.1974). Nauvoo did not request damages for defendants' breach of the contract, but rather requested the trial court to determine that Nauvoo lawfully and justifiably terminated the contract because the contract was terminable at will and unenforceable. In addition, in light of defendants' dismissal of their action, no breach of contract action was either pending or imminent to which Nauvoo's claims could have been pleaded as affirmative defenses. *See Preferred Physicians Mut.,* 916 S.W.2d at 824 (declaratory judgment inappropriately granted where issues sought to be declared could have been asserted as defenses in the same litigation). Finally, Nauvoo's request that the trial court declare the contract terminable at will and unenforceable would have resolved any uncertainty under the facts as pleaded in Nauvoo's petition. Nauvoo's petition stated a cause of action for declaratory relief.

■ The next question is whether venue was proper in St. Louis County. Section 508.040, RSMo (1994) states, "Suits against corporations shall be commenced either in the county where the cause of action accrued, . . . or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business." Defendants argue that because the action, as pleaded, was actually for breach of contract, the proper venue was the place of the breach, not St. Louis County. Nauvoo counters that because the petition pleaded a declaratory judgment action, the proper venue was St. Louis County, where the agreement was negotiated and formed.

■ Where venue is an issue, the plaintiff carries the burden of proof to show an honest belief that there is a justiciable claim against a resident party. *Goff v. Schlegel,* 748 S.W.2d 813, 817 (Mo.App.1988). Here, the relief sought by Nauvoo in its declaratory judgment was a determination that the contract with defendants was terminable at will and unenforceable. Because the relief sought required interpretation of the contract negotiated and formed in St. Louis County, at least some of the activities which gave rise to the cause of action took place in St. Louis County and thus part of the cause of action accrued there. *See, e.g., Jacobs & Goodman, P.A. v. McLin, Burnsed, et al.,* 582 So.2d 98 (Fla.App. 5 Dist.1991) (where relief sought in a declaratory judgment action was avoidance of an employment contract, venue was in county where contract was entered into). Venue in St. Louis County was therefore appropriate.[4]

The trial court did not err in refusing to dismiss Nauvoo's declaratory judgment action. Defendants' first points are denied.

■ In their second points, defendants assert the trial court erred in granting summary judgment in favor of Nauvoo. The trial court granted summary judgment on various grounds, one of which was that the oral agreement between Nauvoo and defendants was "indefinite in term, and terminable at will." The trial court applied Illinois law.[5]

4. Nauvoo's contention that the issue of venue was previously decided by this court when it denied defendants' writ of prohibition and that the denial of the application was the law of the case on the issue of venue is without merit. A denial of an application for a writ of prohibition does not necessarily reflect any view by the court on the merits, but rather may and very often does constitute only a ruling that the situation does not warrant utilization of the extraordinary writ of prohibition. *Lewis v. Lewis,* 930 S.W.2d 475 (Mo.App. E.D.1996).

5. In the trial court, the parties agreed that Illinois law applied. In determining what law to apply in a contract case, Missouri courts determine the "most significant relationship" by considering the following factors: (1) place of contracting; (2) place of negotiations; (3) place of performance; (4) location of subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *CIT Group/Equipment Financing, Inc. v. Integrated Financial Services, Inc.,* 910 S.W.2d 722, 728 (Mo.App.1995). When we apply these factors to the case before us, we find the place of performance (removal of whey) was at Nauvoo's Illinois plant; the subject matter of the contract (whey) was located in Illinois; and the place of incorporation of one of defendants (Nutrition) was Illinois.

■ There is no dispute that the terms of the agreement between Nauvoo and defendants provided that it would last "so long as Nauvoo produced cheese with the by-product of whey and there were no new technologies affecting the value of whey." The terms of a contract must be reasonably certain. Some terms may be missing or left to be agreed upon, but if the essential term or terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract. *Champaign Nat. Bank v. Landers Seed Co., Inc.,* 165 Ill.App.3d 1090, 116 Ill.Dec. 742, 519 N.E.2d 957 (4 Dist.1988). If a contract does not have a specific duration, it will be considered to be terminable at the will of either party. *Alderman Drugs, Inc. v. Metropolitan Life Ins. Co.,* 161 Ill.App.3d 783, 113 Ill.Dec. 704, 709, 515 N.E.2d 689, 694 (1 Dist.1987).

In *R.J.N. Corp. v. Connelly Food Products, Inc.,* 175 Ill.App.3d 655, 125 Ill.Dec. 108, 110, 529 N.E.2d 1184, 1186 (Ill.App. 1 Dist. 1988), plaintiff brought an action against defendant for breach of contract, the terms of which provided that the contract was to remain in effect "as long as Connelly serves Rich's [RJN's] customers." The court determined that this clause could not be construed as an objective event, the occurrence of which terminated the contract thereby making it sufficiently definite in duration. *Id.* 529 N.E.2d at 1187. The court found that the clause indicated an indefinite duration of the contract because Connelly could decide to not serve R.J.N.'s customers at some point in time. *Id.* When Connelly would decide to no longer serve RJN's customers could not be ascertained, making the duration of the contract indefinite and terminable at will. *Id.*

Similarly, the contract between Nauvoo and defendants would remain in effect as long as Nauvoo produced whey as a by-product of its operations. Nauvoo could cease producing whey at any time. When Nauvoo would stop producing whey, however, was not a definite, ascertainable event.

In *Champaign Nat. Bank,* 519 N.E.2d at 957, the agreement provided that the bank would not collect on a note "as long as we make progress toward profitability, had a chance at profitability." The court determined that the contract was too indefinite to enforce. *Id.* 519 N.E.2d at 960. The court questioned who was to judge the elements of "progress toward profitability" or "chance of profitability." *Id.*

In a similar vein, in the contract at issue, the subjective determination as to what constituted "new technologies affecting the value of whey" or how much the value of whey had to be affected before the contract terminated was too indefinite to enforce.

We acknowledge that Illinois courts recognize that a contract may be enforceable if it is terminable upon the occurrence of a cognizable event, even in the absence of a specific termination date. *See, e.g., Consolidated Laboratories, Inc. v. Shandon Scientific Co.,* 413 F.2d 208 (7 th Cir.1969) (applying Illinois law, agreement was for a definite duration and not terminable at will where it was effective until defendant appointed a main distributor and plaintiff became a main dealer of defendant's products); *Donahue v. Rockford Showcase & Fixture Co.,* 87 Ill.App.2d 47, 230 N.E.2d 278, 281–282 (2 Dist.1967) (agreement was for a specific duration and not terminable at will where it provided for automatic cancellation if shipments to plaintiff's customer did not total $25,000.00 in any year). In contrast to these cases, the contract before us had no definitive, objective event by which to determine when the contract terminated automatically.

The trial court did not err in granting summary judgment in favor of Nauvoo because Nauvoo's contract with defendants was terminable at will. In view of the fact that this holding is dispositive of the propriety of the trial court's grant of summary judgment, we need not discuss defendants' other claims of error regarding the grant of summary judgment. Defendants' second points are denied.

The judgment is affirmed.[6]

PUDLOWSKI, P.J. and AHRENS, J., concur.

**6.** Nauvoo's motion to strike defendants' briefs and/or to dismiss their appeals for failure to comply with Rules 84.04(c) and/or 84.04(d) is denied.