R.J.N. CORPORATION, Plaintiff-Appellant, v. CONNELLY FOOD PRODUCTS, INC., *et al.*, Defendants-Appellees.—R.J.N. CORPORATION, Plaintiff-Appellant, v. SCHOEP'S ICE CREAM COMPANY, INC., Defendant-Appellee.

First District (5th Division)   Nos. 86—3233, 87—1797 cons.

Opinion filed October 14, 1988.

George J. Tagler, of Chicago, for appellant.

Mary Ellen Rosemeyer and Steven D. Rakich, of Kreisman & Rakich, of Matteson, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

In this consolidated action, plaintiff R.J.N. Corporation (RJN) appeals from two orders of the circuit court of Cook County granting defendants' motions for summary judgment as to counts I, II, and III of its second amended complaint (appeal No. 86—3233) and counts IV and V of its third amended complaint (appeal No. 87—1797). RJN is a "broker and/or sales representative" of ice cream products. Its second amended complaint alleged breach of oral and written agreements between itself and defendants Connelly Food Products, Inc. (CFP), and Connelly Distributors, Inc. (CD), Illinois wholesalers/distributors of ice cream products. Its third amended complaint alleged tortious interference with contractual relations and prospective business advantage by defendant Schoep's Ice Cream Company, Inc. (Schoep's), a manufacturer of ice cream sold to distributors such as CFP. For the reasons set forth below, we affirm in part, reverse in part, and remand the cause for further consideration.

On January 21, 1983, RJN entered into an oral agreement with CFP whereby CFP agreed to make ice cream deliveries to RJN's customers beginning January 24; RJN entered into the agreement with CFP shortly after Jack's Ice Cream Distributors, Inc. (Jack's), an Indiana wholesaler/distributor, had terminated a similar contract it had with RJN. On January 28, RJN and CFP memorialized their agreement by entering into a written contract, itemizing 16 customers which RJN had served insofar as obtaining ice cream orders, for which RJN was to receive 7½% of all net dollar sales. The contract provided that the agreement would "remain in effect for as long as Connelly [CFP] serves Rich's [RJN's] customers." Deliveries were to commence on February 1 and, subsequently, CFP made deliveries to some of the customers listed in the parties' contract, but it refused to make deliveries to Walt's Food Center (Walt's) in South Holland and Homewood, Illinois, pursuant to directions it received from Schoep's, the manufacturer of the ice cream products to be delivered by CFP and an 80% owner of CFP stock. Schoep's president testified that this action was prompted by threats of an antitrust lawsuit against

Schoep's by Jack's after Jack's "heard" that CFP was going to begin delivery of ice cream products to Walt's Food Centers. Specifically, Jack's told Schoep's that it had a contract with RJN, that RJN owed it a lot of money, and that it felt that CFP should not interfere with its business relationship with RJN. Schoep's also stated that it was informed that RJN had serious financial problems. The time of Schoep's communication to CFP is disputed; Schoep's was unable to point to the month of the communication, RJN contends it was prior to January 24, and CFP stated it was on or about February 1, as well as before January 28. Apparently upon learning of CFP's refusal to serve Walt's, RJN informed Walt's that it would have "to go back to Jack's as their supplier."

In May 1983, according to RJN, the RJN-CFP contract was orally modified, *i.e.*, CFP was to provide the billing to the customers and assume the risks attendant thereto. The record discloses, however, that in May 1983 RJN also informed CFP that all ice cream orders received by RJN thereafter would be placed with Jack's, that RJN would stop using CFP as its supplier, and that it would give its business back to Jack's, "therefore canceling out Connelly['s] agreement and reinstating Jack's as his [RJN's] supplier." RJN's president testified that he personally telephoned each of RJN's customers to inform them that their orders would thereafter be filled by Jack's. Notwithstanding the foregoing, CFP continued to make deliveries to some of RJN's customers for which RJN received its $7\frac{1}{2}\%$ commission, until December 31, 1984, when CFP terminated the parties' contract. This contract is the subject of count I of RJN's second amended complaint; RJN contends that CFP breached the parties' contract in refusing to make deliveries to Walt's and in terminating the contract.

RJN also entered into an oral agreement with CD on September 14, 1983, whereby RJN promised to arrange for the sale of ice cream novelty products made by the Merritt Company to CD and to assist in the resale of such products to retailers in return for a $2\frac{1}{2}\%$ commission on all CD sales of the Merritt products. Similarly, on April 11, 1984, RJN and CD entered into an oral agreement whereby RJN promised to arrange for the sale of Dole ice cream products made by Merritt to CD in return for a specific commission. The specific provisions of the agreements are disputed by the parties. In addition, the parties disagree with respect to the duration of the agreements; RJN contended they were to remain in effect as long as CD served the account, regardless of RJN's performance of any duties, and CD contended the agreements were terminable at will and accordingly, terminated the agreements on June 30, 1984. RJN further contends that

CD never paid it any commissions on the sales of the novelty products which were the subject of the September agreement, whereas CD contends the opposite. With respect to the April agreement, RJN does not dispute that CD paid it commissions on the Dole products sold until July 3, 1984, but argues that it was entitled to commissions after that date. These oral agreements are the subject of counts II and III of RJN's second amended complaint.

On October 22, 1986, the trial court entered summary judgment in favor of CFP and CD as to counts I, II, and III of RJN's second amended complaint, and RJN filed an appeal in this court (No. 86—3233). Thereafter, RJN filed its third amended complaint against Schoep's, which consisted of counts IV (tortious interference with RJN's contractual relations under the RJN-CFP contract) and V (tortious interference with RJN's prospective economic advantage with CFP) based on Schoep's communication to CFP not to make deliveries to Walt's. On May 13, 1987, the trial court granted Schoep's motion for summary judgment on both counts, and RJN appealed (No. 87—1797). Both appeals were then consolidated.

In arguing that the trial court erred in granting defendants summary judgment in its contract action against CFP and CD in appeal No. 86—3233, RJN contends that: (1) neither its written contract with CFP nor oral agreements with CD were terminable at will since they had a definite duration; (2) alternatively, an exception to a terminable-at-will contract applies to the instant case since there was sufficient consideration to support permanent employment under the RJN-CFP contract; (3) assuming that the RJN-CFP contract was terminable at will, a genuine issue existed whether it was entitled to damages for the time period prior to termination of the contract; and (4) CD's answer to its second amended complaint precluded CD from raising the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 *et seq.*) as a defense to the enforceability of the parties' oral agreements.

Dispositive of whether the parties' written contract was terminable at will is an interpretation of the clause therein that it "will remain in effect for as long as Connelly serves Rich's customers." RJN argues that this clause, when considered in conjunction with the occurrence of two additional "events" (*i.e.*, "as long as CFP is the sole supplier of SCHOEP'S products" and "as long as Plaintiff is able to maintain the orders for SCHOEP'S products for CFP to fill"), would terminate the contract and thus render it sufficiently definite in duration.

■ We first observe that the occurrence of the two latter events simply is not set out in the parties' contract. Secondly, RJN did not

raise these contentions in the court below. An issue not presented to or considered by a trial court is deemed waived and need not be considered on review, even in an appeal from a summary judgment. *Harbor Insurance Co. v. Arthur Andersen & Co.* (1986), 149 Ill. App. 3d 235, 500 N.E.2d 707.

■ We further find, contrary to RJN's argument, that the clause that "this agreement will remain in effect *for as long as Connelly serves Rich's customers*" (emphasis added) cannot be construed as an "objective event," the occurrence of which terminates the contract thereby making it sufficiently definite in duration (see *Peters v. Health and Hospitals Governing Comm'n* (1980), 91 Ill. App. 3d 1104, 415 N.E.2d 653, *rev'd on other grounds* (1981), 88 Ill. 2d 316, 430 N.E.2d 1128). Rather, a practical construction of the clause indicates an *indefinite* duration of the contract based upon CFP's apparent option/decision to not serve Rich's customers at some point in time. In other words, the contract would remain in effect *only as long as* CFP served Rich's customers and, therefore, *when* CFP would decide to no longer serve RJN's customers could not be ascertained, making the duration of the contract indefinite and terminable at will. See *Gordon v. Matthew Bender & Co.* (N.D. Ill. 1983), 562 F. Supp. 1286 (a contract with no definite term is terminable at will).

■ RJN alternatively argues that "an exception to [a] terminable at will contract applies to the instant case since there was sufficient consideration to support permanent employment." RJN did not raise this contention in the trial court. Moreover, in its answer to defendants' motion for summary judgment, RJN admitted the agreement was not "perpetual." The issue therefore has been waived by RJN. (See *Harbor Insurance Co. v. Arthur Andersen & Co.* (1986), 149 Ill. App. 3d 235, 500 N.E.2d 707.) We further observe that even if we were to consider this argument, under the circumstances it is without merit since RJN has failed to support its contention that the contract was based on sufficient consideration which was *in addition* to the mere performance of regular services required by the employment agreement itself, one of the exceptions to the general rule that a contract without a definite duration is terminable at will. (See *Gordon v. Matthew Bender & Co.* (N.D. Ill. 1983), 562 F. Supp. 1286.) RJN asserts that the "additional" consideration is that CFP "would have new customers and would be the sole source of SCHOEP'S ice cream products for those customers." We find this assertion to be nothing more than a recitation of regular services, not additional consideration, contracted for under the parties' agreement. In light of the foregoing, therefore, we find that the contract was terminable at will.

RJN also argues that assuming the contract was terminable at will, there was a genuine issue whether it was entitled to damages for breach of the contract prior to its termination based upon CFP's refusal to make ice cream deliveries to Walt's, deliveries which would have entitled it to a 7½% commission/profit on all sales made to Walt's. Specifically, RJN argues that approximately $500,000 in ice cream sales were made to Walt's by another distributor, Jack's, which it would otherwise have made but for CFP's refusal to make deliveries to Walt's. Although RJN asserted this issue in the court below, the court did not consider it and instead granted summary judgment to defendants based on its determination that the contract was terminable at will.

■ Notwithstanding the fact that the contract was terminable at will, we find that the trial court erred in failing to consider RJN's breach of contract and damages claims based on Schoep's communication to CFP not to make deliveries to Walt's. We first briefly observe that CFP's argument, that the trial court "concluded" that since the breach occurred prior to execution of the sued upon written agreement there could be no breach of that agreement, is unsupported by citation to the record or legal authority. Nor does the trial court's order include language to this effect. Moreover, whether the breach occurred prior to execution of the parties' agreement is irrelevant *if*, as RJN argues and CFP "appears" to admit, CFP refused to make deliveries to Walt's *after* execution of the agreement on January 28, 1983, based on Schoep's previous instructions, since Walt's was listed as a customer to be served by CFP under the parties' written contract.

Similarly, whether RJN is entitled to damages is contingent upon the taking of further evidence concerning the date the two orders from Walt's were submitted by RJN to CFP, the legal effect of RJN's action in May 1983 when it told CFP it was turning its business over to Jack's, and the parties' relationship after that date. The record discloses that CFP's president testified that the orders were submitted on or about February 1, 1983, when CFP was to commence serving RJN's customers, whereas CFP's appellate brief appears to state that they were submitted before January 28, the date of execution of the parties' written agreement. RJN argues that the orders were submitted before January 24. If submitted before execution of the agreement on January 28, RJN would not be entitled to damages but, if submitted after that time, it would be entitled to damages for at least the two orders. Also, if no orders were submitted by RJN after January 28 as a result of CFP's refusal to serve Walt's, CFP was in breach of the parties' contract since CFP had not terminated it, and

RJN nonetheless would be entitled to damages until at least approximately May 1983 based on proof of sales it could have made to Walt's. See *Barnett v. Caldwell Furniture Co.* (1917), 277 Ill. 286, 115 N.E. 389.

Whether RJN is entitled to damages after May 1983 is further contingent upon evidence of the parties' relationship after RJN's action in May, *i.e.*, the legal effect flowing from its communication to CFP that it was turning over its business to Jack's and that the parties' contract was "cancelled." As we discussed above, the parties' contract was terminable at will. However, CFP did not terminate the contract but instead initially breached it by refusing to serve 1 of 16 customers (Walt's) and continued to serve other customers listed in the contract after RJN's May 1983 communication. From the state of the record, we cannot determine whether Jack's conduct in May constituted an attempted rescission or abandonment of the contract (see *Bales v. Nelson* (1986), 148 Ill. App. 3d 7, 499 N.E.2d 144) or termination (see *Gage v. Village of Wilmette* (1925), 315 Ill. 328, 146 N.E. 325) or whether the parties entered into a new agreement,[1] their actions thus constituting withdrawals, revocations or waivers of their previous positions with respect to the contract, in light of the fact that CFP continued to serve some of RJN's customers after its May action and RJN received its commission on all sales made to those customers until December 31, 1984.

Finally, we observe that the fact that RJN admitted it was paid all commissions for sales made under the contract does not bar it from arguing, contrary to CFP's contention, that it is entitled to damages for the sales it was prevented from making to Walt's. RJN distinguished these *potential* sales to Walt's from those made to other customers from the inception of its lawsuit against CFP.

Based on the foregoing, we hold that the trial court improperly granted summary judgment as to CFP on RJN's second amended complaint; genuine issues of material fact existed precluding the granting of summary judgment to CFP. (See *Clausen v. Ed Fanning Chevrolet, Inc.* (1972), 8 Ill. App. 3d 1053, 291 N.E.2d 202.) Accordingly, we must remand this cause for further proceedings not inconsistent with this opinion.

We next address RJN's argument that CD was precluded from

---

[1]During oral argument, defendants' counsel indicated that in fact the parties did enter into another agreement after RJN's action in May. However, as noted above, the taking of evidence with respect to the nature of this subsequent agreement is necessary in determining what damages, if any, RJN is entitled to after May 1983 concerning CFP's refusal to service Walt's stores.

raising the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 *et seq.*) as a defense to the enforceability of the oral agreements between itself and RJN. RJN contends that CD admitted the existence of the two oral agreements and, in doing so, it therefore was entitled to a trial on the issue of damages for breach of the agreements. CD argues that although it admitted that it entered into two oral agreements with RJN, it specifically denied the terms of the agreements as pleaded by RJN and, thus, did not waive the Statute of Frauds as a defense.

■ It is well settled that the Statute of Frauds may be waived by an acknowledgement of an agreement and the subject matter thereof. (*McCollum v. Bennett* (1981), 98 Ill. App. 3d 80, 424 N.E.2d 90.) In *McCollum*, the defendants admitted the existence of an agreement whereby they agreed to sell to the plaintiffs a business and "property" located at a certain address. This court found that the defendants' admission did not include an acknowledgement of the subject matter thereof, and by denying that the agreement referred to *real*, as opposed to *personal*, property, the defendants had not waived their defense based on the Statute of Frauds. Here, CD similarly denied the terms of the parties' agreements in its answer to RJN's second amended complaint and it therefore did not waive the Statute of Frauds as a defense.

■ We also observe that as a matter of law, an oral agreement for a duration of more than one year is unenforceable under the Statute of Frauds. (Ill. Rev. Stat. 1985, ch. 59, par. 1.) Here, the oral agreements between RJN and CD were to remain in effect as long as CD served the customers "acquainted" with RJN. As previously discussed in this opinion, the foregoing duration clause is indefinite and, therefore, CD could have continued to serve RJN's accounts for a period of one year or longer. Accordingly, such agreements were required to be in writing to be enforceable. Since they were not, we hold that the trial court correctly found that the agreements were unenforceable under the Statute of Frauds.

We next address RJN's contentions in appeal No. 87—1797. It argues that summary judgment in Schoep's favor was improper because count IV of its third amended complaint stated a cause of action for tortious interference with the RJN-CFP contract; it was entitled to trial by jury on count IV with respect to the allegations and the defenses relative to tortious interference with prospective business advantage; and the trial court improperly considered another case and judgment in granting summary judgment in Schoep's favor as to both counts IV and V of its third amended complaint.

Schoep's contends that RJN has waived its argument concerning count IV because it is based upon an erroneous contention that the trial court found that count IV failed to state a cause of action for tortious interference with contractual relations; that the trial court properly granted it summary judgment on count V based on its findings that it was "justified in its conduct and dealings as a competitor [of RJN], did not employ improper means, did not act to restrain competition, and *** further acted to preserve its economic interests"; and that consideration of a prior court decision was proper where RJN had used transcripts from the prior proceedings as exhibits to pleadings submitted to the court in this matter.

■ We disagree with Schoep's that RJN erroneously argues that the trial court improperly found that count IV failed to state a cause of action. While it is true that such specific language is absent from the court's order of May 13, 1984, the effect of the language which is contained therein nonetheless indicates this basis for the court's judgment. The court recited in its order that RJN had the burden of proving lack of legal justification by Schoep's to interfere with the RJN-CFP contract and the court concluded that RJN failed to sustain its burden of proof based on its finding that Schoep's was "justified" in interfering with the parties' *contractual relations* and prospective business advantage." (Emphasis added.) Lack of legal justification is an essential element in stating a cause of action for tortious interference with contractual relations. (*H. F. Philipsborn & Co. v. Suson* (1974), 59 Ill. 2d 465, 322 N.E.2d 45.) Accordingly, we find the trial court's judgment was entered pursuant to its determination that RJN failed to state a cause of action in failing to prove an essential element of the cause of action—lack of legal justification.

Notwithstanding the foregoing, however, we affirm the trial court's judgment as to count IV. We reject RJN's first argument that the RJN-CFP contract was not terminable at will, since we have determined the contrary as discussed above in appeal No. 86—3233. RJN next contends that even if the contract was terminable at will, maliciously causing a breach of a contract terminable at will, as Schoep's allegedly did, is actionable and governed by the standards for interference with contractual relations. (See *Getschow v. Commonwealth Edison Co.* (1982), 111 Ill. App. 3d 522, 529, 444 N.E.2d 579.) Under those standards, a party must prove the existence of a valid and enforceable contract between itself and another, the defendant's awareness of the contractual relation, the defendant's intentional and unjustified inducement of breach of the contract, a subsequent breach by the other contracting party caused by the defendant's wrongful

conduct, and damages. *Getschow*, 111 Ill. App. 3d at 529.

■■ Here, the issue is solely whether Schoep's conduct was without "legal justification." Two of a number of factors to be considered in determining whether there is just cause for interference with contractual relations are the interest sought to be protected and the methods used. "The third party claiming the privilege must be acting to protect a conflicting interest that is considered to be of equal value to or greater than plaintiff's contractual rights, and the third party's acts to bring about the breach must be legal acts and not unreasonable in the circumstances." *Getschow v. Commonwealth Edison Co.* (1982), 111 Ill. App. 3d 522, 531, 444 N.E.2d 579.

The record discloses that Schoep's was an 80% owner of CFP stock at the subject time. It had received threats of antitrust litigation against it by Jack's, one of its distributors, which were based on Jack's previous contract with RJN. Schoep's president's unrebutted testimony was that at the time he told CFP's president not to serve Walt's stores, he was unaware of a contract between it and RJN—he had only "heard" CFP intended to do business with RJN—and did not learn of the contract until a later time when he appeared for a deposition concerning a lawsuit by RJN against Jack's in the Federal district court and Jack's attorney showed him the contract. Schoep's maintained that based on Jack's threats and the fact that RJN had serious financial problems, it exercised a business decision to direct CFP not to deliver ice cream products to Walt's.

On the other hand, we observe that RJN's appellate argument does not point to any malice which prompted Schoep's conduct. Its argument that Schoep's was not a competitor with it, but instead solely a manufacturer, is also unpersuasive. Schoep's was a competitor of RJN in its position as an 80% owner of CFP to determine whom CFP should best contract with, rather than merely a manufacturer. We also note that CFP and Jack's were competitors of each other, and Schoep's, as an 80% owner of CFP, was therefore a competitor of Jack's through CFP. Additionally, the threatened litigation by Jack's, although allegedly not "looked into" by Schoep's legal counsel, was a valid business factor to be considered by Schoep's, as a director of CFP, since the litigation could harm its relationship with Jack's and CFP, both distributors of its manufactured product, through its acquiescence in CFP's intended service to Walt's. Finally, as an 80% owner of CFP and one of its directors, Schoep's economic interest in CFP as a whole was greater than RJN's contractual rights under the RJN-CFP contract with respect to delivery of ice cream products to two of Walt's stores as opposed to the number of customers CFP could ser-

vice through other contracts.

■ Similarly, we affirm the trial court's dismissal of count V of RJN's third amended complaint alleging tortious interference with a prospective business advantage. It is well settled that where a contract exists between parties, interference by a third party with the contracting parties' relations is protected to a greater degree than is the situation where a prospective business advantage is involved. (*Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 413 N.E.2d 98.) Based on our disposition with respect to count IV that Schoep's was legally justified in interfering with the relations between RJN and CFP, we find that Schoep's justifiably interfered with any prospective business advantage anticipated by RJN since RJN has not shown that Schoep's conduct rose to the level of unfair competition (in fact, RJN contends that *Jack's* wanted to restrain competition) or that Schoep's was not privileged, as a director of CFP, to direct CFP not to make ice cream deliveries to Walt's stores. See *Swager v. Couri* (1979), 77 Ill. 2d 173, 395 N.E.2d 921 (action taken by a corporate officer in accordance with his business judgment and discretion, which is taken to further the corporation's interests, is privileged).

■ In light of the foregoing, we conclude that the trial court properly found that RJN failed to sustain its burden of proving that Schoep's lacked legal justification for its interference with the RJN-CFP contract and RJN's prospective business advantage. We thus affirm its judgment granting Schoep's summary judgment as to counts IV and V of RJN's third amended complaint.

RJN's final argument in this appeal is that the trial court improperly considered a prior unrelated court decision which concerned a dispute between itself and another ice cream distributor, Jack's. RJN asserts that it seasonably objected to consideration of the decision and moved to strike portions of defendants' motion for summary judgment on the second amended complaint. It further contends that consideration of the decision was improper because it was not used to advance an argument of *res judicata* or collateral estoppel as to any facts or issues and the same parties or their privies were not involved. RJN accordingly seeks reversal of judgment in this appeal based on the fact that the relevancy of the decision and its influence upon the trial court in rendering judgment for Schoep's cannot be determined.

■ There is no indication whether RJN renewed its objection to consideration of the Federal decision at the time the court considered counts IV and V of its third amended complaint. If it did not, this issue would be considered waived. If it did raise an objection, we none-

theless find that the trial court's consideration of the decision would not constitute reversible error if improperly considered under any circumstances. According to Schoep's, RJN, in its final pretrial memorandum which is not filed of record, indicated that it intended to use the depositions of Walter Connelly, Jr., and Paul Hagen (officers of CFP and Schoep's) taken in the prior Federal case. RJN also referred to several portions of the depositions taken in the prior case in its answer in the instant case to defendants' motion for summary judgment and to testimony from the depositions in portions of both of its appellate briefs. Schoep's referred to the previous contract entered into by RJN with Jack's in support of its argument that Schoep's had legal justification for directing CFP not to serve Walt's stores.

We have reviewed the Federal court's decision and find that it simply would not have an effect on the court's judgment entered in the instant case. That decision provides a factual background concerning the relations between RJN and Jack's and focuses only on the effect of RJN's subsequent contract with CFP, which it determined acted as a rescission by RJN of its contract with Jack's. It does not discuss RJN's rights and remedies with respect to CFP, such as those raised by RJN in these consolidated appeals. We further observe that this court, apparently like the trial court, found the Federal decision most helpful in clarifying the factual background necessary to understand the parties' dispute. Accordingly, we find that the trial court's consideration of the Federal decision could not have affected its judgment in this appeal.

For the foregoing reasons, the trial court's judgment in appeal No. 86—3233 as to CFP is affirmed in part and reversed in part and the cause remanded for consideration of RJN's breach of contract and damages claims. The trial court's judgment in appeal No. 87—1797 is affirmed.

Appeal No. 86—3233, affirmed in part; reversed in part and remanded.

Appeal No. 87—1797, affirmed.

LORENZ, P.J., and PINCHAM, J., concur.