In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2727

A.T.N., INC., an Illinois corporation,

*Plaintiff-Appellant,*

*v.*

MCAIRLAID'S VLIESSTOFFE GMBH& CO. KG, a foreign
corporation of the Federal Republic of Germany,
AIRLAID ALLIANCE SP.Z.O.O., a joint venture of the
Republic of Poland, and NEWCO ABSORBENTS
GMBH & CO. KG, a foreign corporation of
the Federal Republic of Germany,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 7286—**John F. Grady**, *Judge.*

ARGUED DECEMBER 11, 2008—DECIDED FEBRUARY 25, 2009

Before MANION, EVANS, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Plaintiff A.T.N., Inc. ("ATN")
entered into an agreement with the defendants to
import absorbent medical underpads. The agreement
contained a clause granting ATN the right to retain its
customers as long as it purchased the underpads from

the defendants. A year later, the defendants informed ATN's sole customer that ATN would no longer supply the underpads. ATN sued for breach of contract and unjust enrichment. ATN now appeals from the grant of summary judgment in favor of the defendants on the breach of contract claim. We AFFIRM.

I.

ATN is an Illinois corporation that provides financing and marketing services to other businesses. Its president and sole shareholder is Yossi Azaraf. In 2003, Azaraf became interested in "absorbent cores," which can be used to make hygiene products such as absorbent underpads for use in medical facilities. These cores were manufactured by defendant McAirlaid's Vliesstoffe GmbH & Co. KG ("McAirlaid"), a German manufacturer. In early 2004, Azaraf traveled to Germany and met with Alex Maksimow, the chief executive officer and sole shareholder of McAirlaid. In September 2004, Azaraf returned to Germany with Robert Shapiro, a potential investor, and again met with Maksimow and representatives from defendant NewCo Absorbents GmbH & Co. KG ("NewCo"), a German manufacturer that used McAirlaid's absorbent cores to make the underpads, and from defendant Airlaid Alliance Sp.z.o.o. ("AA"), a Polish supplier of machinery necessary to make absorbent cores and finished products with those cores.[1]

---

[1] Both NewCo and AA were majority-owned by McAirlaid.

Following this meeting, on September 24, 2004, ATN, NewCo, McAirlaid, and AA signed a three-page "Letter of Intent." The preamble to the Letter of Intent stated that "ATN wishes to develop sales of hygiene products in the North American market based on finished products manufactured by Newco a company affiliated with McAirlaids and AA." The letter stated that "ATN intends to install" manufacturing equipment in the United States to create the absorbent cores and to make finished products from them. The companies also agreed that "ATN will use its best efforts to rapidly develop sales of finished products made by Newco Absorbents." NewCo granted ATN "exclusive rights to manufacture the products in North America for a period of 12 months from the date of this agreement." Finally, paragraph 7 of the letter stated that "[c]ustomers of ATN who purchase the products will remain exclusive to ATN for as long as they continue to purchase the products from ATN and ATN purchases the products from Newco in the agreed quantities."

Despite the Letter of Intent, ATN did not install any manufacturing equipment. ATN did find a customer for the finished products: namely, Medline Industries, Inc. ("Medline"), a distributor of medical products. ATN sold products to Medline until December 2005, when Maksimow wrote to ATN to end their business relationship. The letter stated that "we have informed Medline that if they have further requirements, they should place the orders with McAirlaids direct and they have agreed to this." Medline sent an email to ATN, stating that NewCo had claimed that ATN would no longer be able to sell its products.

ATN responded by filing suit against defendants McAirlaid, NewCo, and AA, claiming that the defendants had breached their contract with ATN and had unjustly enriched themselves. NewCo filed counterclaims against ATN for breach of contract and unjust enrichment. Upon their motion, the district court granted summary judgment for the defendants on both of ATN's claims. The parties subsequently settled NewCo's counterclaims and a final judgment was entered. ATN appeals, solely challenging the grant of summary judgment for the defendants on its breach of contract claim.

II.

The district court had jurisdiction over this diversity suit between an Illinois entity and foreign entities under 28 U.S.C. § 1332(a)(2). The district court applied the law of the forum state, Illinois. Because the parties do not contest the application of Illinois law, we apply that state's law as well. *Employers Mut. Cas. Co. v. Skoutaris*, 453 F.3d 915, 923 (7th Cir. 2006). When interpreting a contract, "[t]he primary objective of the court is to determine and give effect to the intent of the parties as expressed in the language of the policy." *Clayton v. Millers First Ins. Cos.*, 892 N.E.2d 613, 615 (Ill. App. Ct. 2008). A reviewing court will "assume that every provision in the contract serves a purpose" and the contract should be "construed as a whole." *Id*.

ATN claims that the defendants breached the contract by preventing it from making future sales to Medline, thereby violating the terms of the exclusivity clause in

paragraph 7. That clause states that "[c]ustomers of ATN who purchase the products will remain exclusive to ATN for as long as they continue to purchase the products from ATN and ATN purchases the products from Newco in the agreed quantities." The district court rejected this claim, concluding that "agreed quantities" referred to amounts that ATN agreed to purchase from NewCo. Because the parties had left open a material term in the contract, the district court concluded that the parties did not intend for the exclusivity clause to be binding. ATN argues on appeal that the district court misinterpreted paragraph 7 of the Letter of Intent and contends that "agreed quantities" refers to amounts agreed to be purchased by customers from ATN.[2] At first blush, ATN's argument seems to have merit. The first part of paragraph 7 refers to customers purchasing products from ATN. Paragraph 7 then indicates that these customers will remain customers of ATN as long as they purchase "the products" from ATN and ATN then purchases "the products" from NewCo. The only agreement mentioned in paragraph 7 prior to the phrase "agreed quantities" is the agreement between the customers and ATN. It is not unreasonable to conclude that the

---

[2] NewCo claims that ATN has waived this argument by failing to raise it in the district court. ATN responds that it did raise the general issue of the meaning of the provision. Because we conclude that ATN cannot obtain relief even if ATN preserved this issue and the issue were resolved in ATN's favor, we need not decide whether ATN has waived this argument.

phrase "agreed quantities" refers to the only agreement previously mentioned: namely, the agreement between the customers and ATN. Under this interpretation, ATN would be obliged to purchase all the products ordered by its customers from NewCo, under pain of losing its exclusive relationship with those customers.[3] However, it is unnecessary for us to resolve this issue, because regardless of its outcome the contract cannot be enforced.

Even if we were to read paragraph 7 of the Letter of Intent as ATN posits, we must still affirm the district court's grant of summary judgment for the defendants because the Letter of Intent was terminable at will. Illinois law generally disfavors perpetual contracts. *Jesperson v. Minn. Mining & Mfg.*, 700 N.E.2d 1014, 1017 (Ill. 1998). For this reason, contracts of indefinite duration are generally deemed terminable at will by either party. *Id*. at

---

[3] ATN also develops a separate argument that the relevant sentence establishes a "requirements contract" with NewCo, under which NewCo would be required to provide ATN all the products necessary for ATN to fulfill its orders. Although ATN couches this interpretation as distinct from the interpretation described above, it seems that ATN has merely reproduced the same interpretation in a different guise. That is, under ATN's reading of the relevant sentence, ATN would be obliged to turn to NewCo for the ordered products, and NewCo would be obliged to supply ATN with the products necessary to fulfill its orders. Nonetheless, regardless of whether this is a separate argument or just a re-packaging of its original interpretation, ATN is not entitled to relief, as will be shown below.

1016. As the Illinois Supreme Court explains, "Where parties have failed to agree on a contract's duration, the contract is construed as terminable at the will of either party because they have not agreed otherwise and it would be inappropriate for a court to step in and substitute its own judgment for the wisdom of the parties." *Id*. at 1017. "Advances in technology, changes in consumer taste and competition mean that once-profitable businesses perish regularly. Today's fashion will tomorrow or the next day inevitability fall the way of the buggy whip, the eight-track tape and the leisure suit. Men and women of commerce know this intuitively and achieve the flexibility needed to respond to market demands by entering into agreements terminable at-will." *Id*.

However, if an otherwise indefinite contract is terminable upon the occurrence of a specific event, then it is not considered terminable at will. *Id*. at 1016. This event must be "an objective event, the occurrence of which terminates the contract thereby making it sufficiently definite in duration." *R.J.N. Corp. v. Connelly Food Prods., Inc.*, 529 N.E.2d 1184, 1187 (Ill. App. Ct. 1988) (quotations and citations omitted). Thus, we must determine whether the exclusivity clause was tied to a specific, objective event that would render the agreement sufficiently definite in duration. If it was, then the defendants could not terminate the contract without giving rise to a cause of action for breach.

Illinois courts have considered various contractual terms to determine whether they establish a specific event that will prevent a contract from being deemed

terminable at will. In *Jesperson v. Minnesota Mining & Manufacturing Co.*, 681 N.E.2d 67 (Ill. App. Ct. 1997), the Illinois Appellate Court examined whether a contract was of indeterminate duration and thus terminable at will. The contract in question permitted one party to terminate the contract for one of several listed material breaches, and allowed the other party to terminate upon 30 days' written notice. *Id.* at 70-71. The Illinois Appellate Court stated that "[i]f one of the parties could institute a termination-triggering event, then the contract should be considered terminable at will." *Id.* at 70. The court held that, because one of the parties could breach the contract and thereby provide grounds for termination, the events permitting termination could not "be considered objective events that would have the effect of making the agreement sufficiently definite in duration," *id.*, and the contract was deemed terminable at will, *id.*

The Illinois Supreme Court affirmed for two reasons. *Jesperson*, 700 N.E.2d 1014. First, "the language of the termination provision is permissive and equivocal; a party 'may' terminate for the stated grounds." *Id.* at 1016. The Illinois Supreme Court contrasted this situation to "a case in which the parties included an exclusive and specific right to terminate for cause in a contract otherwise of indefinite duration." *Id.* Second, the court noted that "the termination events are themselves instances of material breach, and *any* contract is terminable upon the occurrence of a material breach." *Id.* The court approvingly cited a Fifth Circuit case for the proposition that "'[a]n agreement which is otherwise indefinite in duration and terminable at will cannot be converted

into an agreement of definite duration by the mere tran-
scription of such universals within the text of the contract.'"
*Id*. at 1016-17 (quoting *Trient Partners I Ltd. v. Blockbuster
Entm't Corp.*, 83 F.3d 704, 709 (5th Cir. 1996)).

Under the rationale of both *Jesperson* cases, the exclusiv-
ity clause in paragraph 7 of the Letter of Intent was termi-
nable at the will of either party. The clause stated
that customers would remain exclusive to ATN "for as
long as they continue to purchase the products from
ATN and ATN purchases the products from Newco in
the agreed quantities." Three events would therefore
end exclusivity: first, the customer stops purchasing from
ATN; second, ATN stops purchasing its customers'
requirements from NewCo; and third, NewCo stops
supplying ATN. Thus, the contract permitted both ATN
and NewCo independently to terminate the contract.
Under the two *Jesperson* decisions, a contract permitting
one party to terminate based on a material breach by
the other party is deemed terminable at will. 681 N.E.2d
at 70; 700 N.E.2d at 1016-17. In this case, both parties
could end the agreement by non-performance, and
hence these cases require the conclusion that the con-
tract was terminable at will. Because the contract termi-
nates if either party stopped purchasing or supplying
the products, under Illinois law the contract between
ATN and the defendants was terminable at will. *See also
Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*,
815 N.E.2d 911, 915 (Ill. App. Ct. 2004) (holding that a
contract that failed to specify duration was terminable
at will); *Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817,
832, 839-40 (Ill. App. Ct. 2003) (holding that an employ-

ment contract was tied to an objective event and thus not terminable at will; the contract guaranteed that the employee's salary would not be substantially reduced as long as he remained "capable of performing" his job); *R.J.N.*, 529 N.E.2d at 1187 (holding that a contract was terminable at will when it stated that "this agreement will remain in effect for as long as [one party] serves [the other's] customers").

This outcome is in accord with our decision in *Baldwin Piano, Inc. v. Deutsche Wurlitzer GmbH*, 392 F.3d 881 (7th Cir. 2004). In *Baldwin*, the parties had worked under a licensing contract for eighteen years before the licensor filed suit to declare the licensing agreement unenforceable as a contract of indefinite duration. The contract stated that "this Agreement shall continue in force without limit of period but may be cancelled by the Licensor for material breach." *Id*. at 882. Once a material breach occurred, the licensor was required to notify the licencee, who then had 90 days to cure the breach or seek arbitration; should the licensee fail to do either, the licensor could then terminate the contract. *Id*. *Baldwin* found this contract to be similar to that in *Lichnovsky v. Ziebart International Corp.*, 324 N.W.2d 732 (Mich. 1982), a case discussed by the Illinois Supreme Court in *Jesperson*. *Baldwin*, 392 F.3d at 884. In *Lichnovsky*, a contract was deemed definite and not terminable at will when one party could terminate upon the other's breach only after giving the breaching party the opportunity to cure within a defined period. 324 N.W.2d at 736-37. The Illinois Supreme Court in *Jesperson* had found the con- tract in *Lichnovsky* to be different from that in *Jesperson*. 700 N.E.2d at 1016. This court in *Baldwin* found that a

contract permitting termination only after a material breach and failure to cure within a specified period was not terminable at will. 392 F.3d at 886. In contrast, the contract between ATN and McAirlaid requires termination immediately upon either party's refusal to comply with the contract. Therefore, the contract was terminable at will.

ATN argues that the contract was sufficiently definite because it was terminable based on events other than a breach, namely when customers no longer purchased the products from ATN. However, the two cases cited by ATN—*In re Commodity Merchants, Inc.*, 538 F.2d 1260 (7th Cir. 1976), and *Stein v. Isse Koch & Co.*, 112 N.E.2d 491 (Ill. App. Ct. 1953)—involved contracts that were only expressly terminable based on events other than compliance with the contractual terms, *see In re First Commodity Merchs.*, 538 F.2d at 1262 n.1 (stating that one party may terminate contract if the other party's "financial condition is found to be or becomes unsatisfactory"); *Stein*, 112 N.E.2d at 493 (contract would end at termination of the plaintiff's military service). Conversely, in this case paragraph 7 of the Letter of Intent permits either ATN or NewCo to terminate the contract at will by simply refusing to comply with its terms. Accordingly, the exclusivity clause in the Letter of Intent makes this agreement terminable at will.

## III.

Because the agreement between ATN and the defendants was of indefinite duration and not bounded by a specific

event, it was terminable at will under Illinois law. Therefore, the defendants could cease supplying ATN without running afoul of the agreement. Accordingly, the district court's grant of summary judgment for the defendants on ATN's breach of contract claim is AFFIRMED.