# Illinois Official Reports

## Appellate Court

---

### *Rico Industries, Inc. v. TLC Group, Inc.*, 2014 IL App (1st) 131522

---

| | |
|---|---|
| Appellate Court Caption | RICO INDUSTRIES, INC., an Illinois Corporation, Plaintiff-Appellant, v. TLC GROUP, INC., an Arkansas Corporation, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-1522 |
| Filed | February 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In answer to a certified question pursuant to Supreme Court Rule 308, the appellate court responded that a sales representative agreement that can only be terminated upon the express written consent of both parties does not contain a specific objective event that renders the agreement sufficiently definite in duration such that it is not terminable at will, since the Illinois Supreme Court has held that Illinois public policy prohibits contracts of indefinite duration and the appellate court has determined that a contract terminable only upon the mutual agreement of the parties is indefinite in duration and is terminable at will. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-35979; the Hon. Diane L. Larsen, Judge, presiding. |
| Judgment | Certified question answered; order reversed and remanded for further proceedings. |

| Counsel on Appeal | Gary I. Blackman and Christina E. Lutz, both of Levenfeld Pearlstein, LLC, of Chicago, for appellant. |
|---|---|
| | Alan E. Sohn, of Law Offices of Alan E. Sohn, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Palmer and Taylor concurred in the judgment and opinion. |

**OPINION**

¶ 1      Plaintiff Rico Industries, Inc. (Rico), entered into an agreement with defendant TLC Group, Inc. (TLC), making TLC the exclusive sales representative of its products to Wal-Mart Stores, Inc. (Wal-Mart), and its affiliates and subsidiaries. The agreement contained a termination provision which stated that the contract may only be terminated by the written agreement of both parties. Rico filed a declaratory judgment action, seeking a judgment that the agreement is terminable at will because the termination provision created a perpetual contract and is thus contrary to Illinois public policy. In its answer, TLC pled counterclaims for breach of contract, *quantum meruit*, an accounting, and causes of action under the Arkansas sales representative statutes and the Illinois Sales Representative Act. Ark. Code Ann. § 4-70-301 *et seq.* (West 2012); 820 ILCS 120/0.01 *et seq.* (West 2012).

¶ 2      TLC filed a motion pursuant to section 2-615 of the Illinois Code of Civil Procedure for judgment on the pleadings regarding whether the termination provision created a perpetual contract. 735 ILCS 5/2-615(a), (e) (West 2012). The trial court granted the motion, finding that the termination provision was not unenforceable as a matter of public policy. Rico filed a motion requesting a Rule 308 finding (Ill. S. Ct. R. 308 (eff. Feb. 26, 2010)), and the trial court certified the following question for our review: "Does a sales representative agreement that can only be terminated upon the express written consent of both parties contain a specific objective event that renders the agreement sufficiently definite in duration such that it is not terminable at will?" For the following reasons, we answer the certified question "no," and, therefore, reverse and remand for further proceedings, including consideration of TLC's counterclaims.

¶ 3                             BACKGROUND

¶ 4      The following facts are taken from the pleadings and are not in dispute. Rico is an Illinois corporation engaged in the business of manufacturing novelty products. TLC is an Arkansas corporation that acts as a sales representative. On December 17, 2007, Rico and TLC entered into the agreement at issue, which was attached as an exhibit to the complaint. TLC agreed to serve as Rico's exclusive sales representative to Wal-Mart and its subsidiaries and affiliates.

The entirety of the agreement is only two-thirds of a page long. Under the agreement, TLC has the right to serve as a sales representative to other companies, so long as other companies' products do not directly compete with Rico's products.

¶ 5    The agreement includes a termination provision, which reads as follows: "Any change to, cancellation of, or termination of this Agreement shall be made in writing by TLC Group and Rico. Any change to, cancellation of, or termination of this Agreement shall be null and void *unless TLC Group and Rico mutually agree in writing to do so*." (Emphasis added.) In Rico's amended complaint for declaratory judgment, Rico alleges that it was not represented by counsel during the negotiating and drafting of the agreement.

¶ 6    Rico also attached as an exhibit to its complaint a letter dated September 24, 2012. In the letter, Rico informed TLC that Rico desired to terminate the agreement and that Rico believed it had the legal right to unilaterally terminate the agreement. The letter argued that the termination provision in the agreement was "null and void, unenforceable and against public policy. Under this provision, Rico could conceivably be required to work with [TLC] forever." Rico attached to its letter a copy of its proposed complaint in the case at bar.

¶ 7    On September 24, 2012, the same day it sent the letter, Rico filed its complaint for a declaratory judgment. The complaint contains two counts. First, Rico asks the trial court to determine that it had the right to terminate the agreement unilaterally because the termination provision created a perpetual contract and is therefore contrary to Illinois public policy. Second, Rico alleges that a dispute exists regarding commissions owed by Rico to TLC. TLC filed a motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2012)). The trial court granted the motion as to count I and denied the motion as to count II. The trial court granted Rico leave to file an amended count I. Rico filed an amended complaint for declaratory judgment on January 7, 2013, realleging in count I that the termination provision violates Illinois public policy and, therefore, the agreement is terminable at will. Rico attached the agreement and the September 24, 2012, letter to the complaint as exhibits.

¶ 8    On January 16, 2013, TLC filed its answer, which included five counterclaims. Count I requested an accounting, alleging that Rico ceased making commission payments to TLC following the September 2012 letter. TLC alleges that Rico directly bills Wal-Mart for its sales and that TLC is entitled to a 12% commission on all sales to Wal-Mart. TLC alleges that, as a result of the direct billing arrangement, Rico controls the information needed to determine the amount owed to TLC. TLC also alleges that it "is informed and believes Rico underpaid it on sales made since the inception of" the agreement. Count II alleges a breach of contract, alleging that Rico's failure to pay commissions since the September 2012 letter amounts to a breach. Count III alleges a cause of action under the Arkansas sales representative act (Ark. Code Ann. § 4-70-301 *et seq.* (West 2012)). Count IV alleges, in the alternative, a cause of action under the Illinois Sales Representative Act (820 ILCS 120/0.01 *et seq.* (West 2012)). The Arkansas sales representative act and the Illinois Sales Representative Act provide that a principal will be liable to a sales representative for three times the damages sustained by a sales representative in the event that a principal fails to compensate a sales representative for commissions owed under a contract. Ark. Code Ann. § 4-70-306 (West 2012); 820 ILCS 120/3

- 3 -

(West 2012). Count V, also pled in the alternative, alleges a cause of action for *quantum meruit* recovery. In count V, TLC alleges that, even if the termination provision is found to be unenforceable, it is still entitled to the agreed-upon commissions because Rico benefitted from the sales representative services provided by TLC during the period when the validity of the termination provision was contested. TLC alleges that to deny it *quantum meruit* recovery would grant Rico a windfall.

¶ 9 TLC filed a partial section 2-615 motion to dismiss count I, or, in the alternative, for partial judgment on the pleadings for count I.[1] TLC's motion to dismiss argues that Rico failed to state a claim that the termination provision is contrary to public policy and therefore void. In the alternative, TLC argues that it is entitled to judgment on the pleadings because the agreement is not perpetual because it is terminable at the mutual agreement of both parties. TLC argues that the contract may also be terminated if Rico stops selling products specified in the agreement to Wal-Mart. On February 15, 2013, Rico filed a cross-motion for judgment on the pleadings for count I, arguing that Illinois courts have held that contracts which are terminable only by mutual agreement are contrary to public policy and therefore terminable at will.

¶ 10 On April 4, 2013, the trial court held a hearing on both section 2-615 motions. The trial court denied Rico's motion to dismiss count I and granted TLC's motion for judgment on the pleadings for count I. The trial court found that the termination provision was not contrary to public policy because the provision created an "objective event," the mutual agreement of the parties, that would terminate the contract. The remaining counts in Rico's declaratory judgment and TLC's counterclaims remain pending at the conclusion of the motion hearing.

¶ 11 On April 22, 2013, Rico filed a motion for a finding pursuant to Illinois Supreme Court Rule 308(a) (eff. Feb. 26, 2010). On May 1, 2013, the trial court granted Rico's motion and certified the following question for interlocutory appeal:

> "Does a sales representative agreement that can only be terminated upon the express written consent of both parties contain a specific objective event that renders the agreement sufficiently definite in duration such that it is not terminable at will?"

Rico filed its petition for leave to appeal with this court on May 15, 2013, and we granted leave to appeal on June 6, 2013.

¶ 12 ANALYSIS

¶ 13 I. Standard of Review

¶ 14 A motion for judgment on the pleadings "raises the issue of the sufficiency of the pleadings." *Hankins v. Pekin Insurance Co.*, 305 Ill. App. 3d 1088, 1091 (1999). A trial court properly grants a motion for judgment on the pleadings, pursuant to section 2-615(e), "if the pleadings on file disclose no genuine issues of material fact so that the movant is entitled to judgment as a matter of law." *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 32. Since the trial court rules as a matter of law when deciding a motion for judgment on the

---

[1]The copy of the motion included in Rico's supporting record filed with its Rule 308 petition is not date-stamped.

pleadings, our review of the judgment is *de novo*. *Hope Clinic*, 2013 IL 112673, ¶ 32. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). The only matters to be considered in ruling on a motion for judgment on the pleadings are the allegations of the pleadings. *Hankins*, 305 Ill. App. 3d at 1091. "If a claim or defense is founded upon a written instrument, a copy thereof *** must be attached to the pleading as an exhibit or recited therein, unless the pleader attaches to his or her pleading an affidavit stating facts showing that the instrument is not accessible to him or her." 735 ILCS 5/2-606 (West 2012).

¶ 15                              II. Illinois Public Policy

¶ 16        The trial court concluded that the agreement was sufficiently definite so as not to be a perpetual contract, and the question for us on appeal is whether the agreement was sufficiently definite to escape the label of "a perpetual contract."

¶ 17        Our Illinois Supreme Court "has a long tradition of upholding the right of parties to freely contract." *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 64 (2006). "Consequently, [its] decisions have held that a private contract, or provision therein, will not be declared as void as contrary to public policy unless it is ' "clearly contrary to what the constitution, the statutes or *decisions of the courts* have declared to be the public policy" ' or it is clearly shown that the contract is ' "manifestly injurious to the public welfare." ' " (Emphasis added.) *Mohanty*, 225 Ill. 2d at 64-65 (quoting *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 300 (2006), quoting *Schumann-Henik v. Folsom*, 328 Ill. 321, 330 (1927)). *Mohanty* involved a plaintiff arguing that restrictive covenants in physician-employment contracts were against the public policy of Illinois, and the Illinois Supreme Court found that the plaintiff "carr[ied] a heavy burden" to show that such restrictive covenants were contrary to Illinois public policy. *Mohanty*, 225 Ill. 2d at 65.

¶ 18               III. Perpetual Contracts Violate Illinois Public Policy

¶ 19        TLC argues on appeal, first, that Illinois public policy does not prohibit perpetual contracts. However, in *Jespersen v. Minnesota Mining & Manufacturing Co.*, 183 Ill. 2d 290, 291 (1998), our Illinois Supreme Court found, in no uncertain terms, that "[i]t has long been recognized that contracts of indefinite duration are generally terminable at the will of the parties." The Illinois Supreme Court further found that "two important public policies" are reflected in this general rule. *Jespersen*, 183 Ill. 2d at 295. "First, in general, individuals should be free to order their affairs subject to important qualifications for instances of fraud, duress, or undue influence." *Jespersen*, 183 Ill. 2d at 295. "Second, *perpetual contracts are disfavored.*" (Emphasis added.) *Jespersen*, 183 Ill. 2d at 295 (citing *Adkisson v. Ozment*, 55 Ill. App. 3d 108, 112 (1977)). " 'Forever' is a long time and few commercial concerns remain viable for even a decade. Advances in technology, changes in consumer taste and competition mean that once-profitable businesses perish-regularly." *Jespersen*, 183 Ill. 2d at 295. As a result of this decision of our state's highest court, we find that perpetual contracts are contrary to public

policy. See *Mohanty*, 225 Ill. 2d at 64-65 (finding that the decisions of the courts are a source for determining what constitutes public policy).

¶ 20                     IV. This Sales Representative Agreement

¶ 21     We must now determine whether the termination provision included in the agreement between Rico and TLC created a perpetual contract. If it did create a perpetual contract, the termination provision is contrary to public policy and the agreement is terminable at the will of the parties. *Jespersen*, 183 Ill. 2d at 295.

¶ 22     Rico cites to (1) *Jespersen* and (2) *R.J.N. Corp. v. Connelly Food Products, Inc.*, 175 Ill. App. 3d 655 (1988), to argue that the agreement is perpetual. Although neither case is factually identical with the facts of the case at bar, we do find both cases instructive.

¶ 23     In *Jespersen*, the plaintiff agreed to serve as a sales representative for a company that was later purchased by the defendant. *Jespersen*, 183 Ill. 2d at 292. Under the agreement, the plaintiff became the exclusive distributor of the company's products in the Chicago area. *Jespersen*, 183 Ill. 2d at 292. The agreement provided that the plaintiff could terminate the agreement upon 30 days' written notice to the company. *Jespersen*, 183 Ill. 2d at 294. It also enumerated five circumstances under which the company could terminate the agreement:

> " '[The company] *may*, upon not less than thirty (30) days notice to [the plaintiff], terminate this agreement for any of the following reasons:
>
> (a) [The plaintiff's] failure to reasonably promote [the company's] products ***.
>
> (b) [The plaintiff's] breach of any term or condition of this agreement.
>
> (c) [The plaintiff's] failure to make payment ***.
>
> (d) The death, bankruptcy, or insolvency of [the plaintiff].
>
> (e) The sale *** or transfer *** of all or any part of [the plaintiff's] rights under this contract without the written approval and consent of [the company].' " (Emphasis added.) *Jespersen*, 183 Ill. 2d at 293-94.

After the defendant purchased the company, the defendant sent a letter to the plaintiff, informing him that the defendant intended to terminate the agreement. *Jespersen*, 183 Ill. 2d at 292. The plaintiff filed a lawsuit alleging that the defendant breached the contract by terminating it. *Jespersen*, 183 Ill. 2d at 292-93. The trial court dismissed the lawsuit for failure to state a cause of action on the grounds that the agreement "was of indefinite duration and thus terminable at will," and that the agreement expressly granted the defendant the right to cancel a distributor's right to use the company's name. *Jespersen*, 183 Ill. 2d at 293.

¶ 24     The supreme court affirmed, finding that the "termination provision is not sufficient to take this agreement of indefinite duration out of the general rule of at-will termination." *Jespersen*, 183 Ill. 2d at 294. First, the supreme court found that the language of the termination provision was "permissive and equivocal; a party 'may' terminate for the stated grounds–the clear inference being that those grounds are not the sole or exclusive basis for termination." *Jespersen*, 183 Ill. 2d at 294. The supreme court found that this was distinct from a situation in which an otherwise indefinite contract "included an exclusive and specific right to terminate for cause." *Jespersen*, 183 Ill. 2d at 294 (" 'the inclusion in this agreement of a specific right to

- 6 -

terminate for cause *** militates against a construction of the agreement that the licensor can terminate at will' " (quoting *Lichnovsky v. Ziebart International Corp.*, 324 N.W.2d 732, 737 (Mich. 1982))). Second, the supreme court found that the enumerated events allowing for termination "are themselves instances of material breach, and *any* contract is terminable upon the occurrence of a material breach." (Emphasis in original.) *Jespersen*, 183 Ill. 2d at 294. "Where a contract is indefinite in duration, the delineation of instances of material breach in the context of a permissive and nonexclusive termination provision will not create a contract terminable for cause." *Jespersen*, 183 Ill. 2d at 295.

¶ 25 Unlike *Jespersen*, the termination provision in the case at bar did not enumerate a list of material breaches. Instead, the termination provision stated that the agreement may be terminated only upon the written agreement of both parties. This court's decision in *R.J.N. Corp. v. Connelly Food Products, Inc.* concerned a contract with a termination provision that was not based on material breach. In *R.J.N.*, the plaintiff was a " 'broker and/or sales representative' of ice cream products," and the defendant and its affiliates were "wholesalers/distributors of ice cream products." *R.J.N.*, 175 Ill. App. 3d at 657. The plaintiff entered into an agreement with the defendant, wherein the defendant "agreed to make ice cream deliveries to [the plaintiff's] customers." *R.J.N.*, 175 Ill. App. 3d at 657. The agreement provided that it would " 'remain in effect for as long as [the defendant] serves [the plaintiff's] customers.' " *R.J.N.*, 175 Ill. App. 3d at 657. The defendant refused to make deliveries to certain of the plaintiff's customers, and eventually, the defendant terminated the agreement. *R.J.N.*, 175 Ill. App. 3d at 657-58. The plaintiff filed a lawsuit, alleging, among other things, breach of contract on the basis of the defendant's refusal to deliver to certain customers and its termination of the agreement. *R.J.N.*, 175 Ill. App. 3d at 658. The trial court granted summary judgment to the defendant on the breach of contract cause of action, and the plaintiff appealed. *R.J.N.*, 175 Ill. App. 3d at 659.

¶ 26 On appeal, the plaintiff argued that the agreement was not terminable at will because it had a definite duration, namely " 'for as long as [the defendant] serves [the plaintiff's] customers.' " *R.J.N.*, 175 Ill. App. 3d at 657. This court, however, found that "the clause that 'this agreement will remain in effect *for as long as [the defendant] serves [the plaintiff's] customers*' (emphasis added) cannot be construed as an 'objective event,' the occurrence of which terminates the contract thereby making it sufficiently definite in duration." *R.J.N.*, 175 Ill. App. 3d at 660. Instead, this court found that "a practical construction of the clause indicates an *indefinite* duration of the contract based upon [the defendant's] apparent option/decision to not serve [the plaintiff's] customers at some point in time." (Emphasis in original.) *R.J.N.*, 175 Ill. App. 3d at 660. The agreement would remain in effect only for as long as the defendant served the plaintiff's customers, and, "therefore, *when* [the defendant] would decide to no longer serve [the plaintiff's] customers could not be ascertained, making the duration of the contract indefinite and terminable at will." (Emphasis in original.) *R.J.N.*, 175 Ill. App. 3d at 660.

¶ 27 The parties disagree as to how to interpret *R.J.N.* TLC argues that the termination provision in *R.J.N.* is distinguishable from the provision in the case at bar, which requires mutual consent. TLC argues that in *R.J.N.*, the contract was terminable at will because the provision

expressly stated that the contract would remain in force until the defendant chose to stop serving the plaintiff's customers, and, therefore, the defendant could choose to stop serving customers at will. *R.J.N.*, 175 Ill. App. 3d at 660. TLC argues that this is different from the provision at bar, which, requires consent by both parties to terminate the provision, rather than a unilateral decision. However, the reasoning in the Second District's decision in *Donahue v. Rockford Showcase & Fixture Co.*, 87 Ill. App. 2d 47 (1967), which neither party cites, demonstrates why TLC's argument is not persuasive. In addition, a contract terminable only upon the written agreement of the parties is indefinite because you cannot foresee when that will happen and it may never happen, and therefore it is of an indefinite duration.

¶ 28    *Donahue* concerned an employment contract between the plaintiff, an individual, and the defendant, a corporation. *Donahue*, 87 Ill. App. 2d at 48-49. The plaintiff's employment required him to "represent the defendant within a certain specified area and to sell its products." *Donahue*, 87 Ill. App. 2d at 48. After working for the defendant for 18 months, the plaintiff sent a letter to the defendant's president which included the following provision: " 'Due to [the plaintiff's] contributions of abnormally high expenses, relying on reorders for actual net compensation above expenses, *the agreement to run until cancelled by mutual consent of both parties or changed by mutual consent*.' " (Emphasis added.) *Donahue*, 87 Ill. App. 2d at 49. The defendant's president signed the letter, in his capacity as president, beneath the plaintiff's signature. *Donahue*, 87 Ill. App. 2d at 49. Two months later, the plaintiff sent a second letter, " 'suggest[ing] that if [the plaintiff's] shipments, in any twelve month period, fall below twenty five thousand, \*\*\* *our agreement would be automatically cancelled*.' " (Emphasis added.) *Donahue*, 87 Ill. App. 2d at 49-50. Again, both parties signed the letter. *Donahue*, 87 Ill. App. 2d at 50.

¶ 29    Eventually, a dispute arose between the parties, and the defendant sent a letter to the plaintiff informing him that the defendant was terminating his employment. *Donahue*, 87 Ill. App. 2d at 50. The plaintiff filed a lawsuit, arguing that the defendant's unilateral termination breached the contract because, by its terms, it could only be terminated if his commissions fell below $25,000 in any 12-month period. *Donahue*, 87 Ill. App. 2d at 50. The trial court found that the parties had entered into a valid contract of employment, but that the contract was for an indefinite period of time and, thus, terminable at will. *Donahue*, 87 Ill. App. 2d at 48.

¶ 30    On appeal, the Second District affirmed the trial court. *Donahue*, 87 Ill. App. 2d at 53. The Second District found that the letters constituted a contract and that the first letter created a contract that would last until it was " 'cancelled by mutual consent.' " *Donahue*, 87 Ill. App. 2d at 52. Initially, the Second District found that the second letter, which stated that the plaintiff's employment would be automatically terminated if his commissions were less than $25,000 in any 12-month period, "did not change the first [letter] in regard to the duration of the employment" and that, through both letters, "the agreement was to be terminated only with 'mutual consent.' " *Donahue*, 87 Ill. App. 2d at 52-53. However, on rehearing, the Second District "depart[ed]" from its opinion. *Donahue*, 87 Ill. App. 2d at 54. After reflecting upon the second letter, the Second District found that the second letter "added a condition of termination that was not present in the first letter": the automatic cancellation in the event that the plaintiff's commissions were less than $25,000 in any 12-month period. *Donahue*, 87 Ill. App.

2d at 54. "Unless both parties agreed, neither could terminate, absent cause, *unless the contingency were met*." (Emphasis added.) *Donahue*, 87 Ill. App. 2d at 54. The Second District found that both letters provided that the contract could be terminated by mutual consent, but "the contract *would have been for an indefinite duration and thus terminable at will* absent the condition added in the second letter." (Emphasis added.) *Donahue*, 87 Ill. App. 2d at 54. In other words, if the employment contract had been terminable only by the mutual consent of the parties, it would have amounted to a contract of indefinite duration and thus been terminable at will. The Second District found that it was the commissions contingency that amounted to the setting of a condition that removed the contract from the realm of indefinite duration. *Donahue*, 87 Ill. App. 2d at 54.

¶ 31    Based on the Second District's reasoning in *Donahue*, agreements that are terminable only by the mutual agreement of the parties are contracts of indefinite duration and, thus, terminable at will. The agreement between Rico and TLC was terminable only by the written consent of both parties. As a result, its duration was indefinite and must therefore be found to be terminable at will. Thus, we answer the certified question "no," and reverse the trial court's grant of judgment on the pleadings to TLC on count I.

¶ 32                                  V. Remaining Counts

¶ 33    The parties make arguments concerning both (1) the date on which the agreement should be found to have been terminated and (2) the Arkansas statute and the Illinois Sales Representative Act. However, we decline to reach these issues. The sole question certified under Rule 308 for our review was: "Does a sales representative agreement that can only be terminated upon the express written consent of both parties contain a specific objective event that renders the agreement sufficiently definite in duration such that it is not terminable at will?" We limit our analysis to answering this question and decline to address other matters related to the litigation. We remand this case to the trial court so that it can determine what, if anything, is owed, the date on which the contract was terminated, and all other issues of fact and law still pending.

¶ 34                                     CONCLUSION

¶ 35    The Illinois Supreme Court has previously held that Illinois public policy prohibits contracts of indefinite duration (*Jespersen*, 183 Ill. 2d at 295), and the appellate court has previously determined that a contract that is terminable only upon the mutual agreement of the parties is indefinite in duration (*Donahue*, 87 Ill. App. 2d at 54). As a result, a sales representative agreement terminable only upon the mutual agreement of the parties is not sufficiently definite in duration and is terminable at will.

¶ 36    Certified question answered; order reversed and remanded for further proceedings.